1998 OK 28

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Emil Virgil SPADAFORA, Respondent.**

**SCBD No. 4224.**

Supreme Court of Oklahoma.

March 31, 1998.

---

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Charles Rouse, Oklahoma City, for Respondent.

OPINION

WATT, Justice.

¶1 On November 8, 1996, the Oklahoma Bar Association filed a complaint against Emil Virgil Spadafora alleging one count of failure to communicate with his client and failure to respond to the Oklahoma Bar Association. As enhancement, the Bar advised that Respondent had previously received a private reprimand from the Professional Responsibility Commission for misconduct involving neglecting client matters.

¶ 2 On November 20, 1996, the Bar filed an amended complaint, which included an additional count, Count II, alleging that Respondent again failed to communicate with another client and failed to respond to the Bar.

¶ 3 On December 16, 1996, the Bar filed a second amended complaint and included two additional counts, Counts III and IV. Count III alleged Respondent failed to return calls or otherwise communicate with his client and that Respondent failed to respond to the Bar. Count IV alleged Respondent again failed to communicate with his client and, once again, failed to respond to the Bar.

¶ 4 On March 6, 1997, the Bar filed a third amended complaint that included additional rule violations in each of the four counts.

¶ 5 A hearing commenced before the trial panel of the Professional Responsibility Tribunal on February 24, 1997, and was continued on April 8, 1997, May 6, 1997, and concluded on May 21, 1997. On May 21, 1997, following the testimony of sworn witnesses, the admission of various exhibits and arguments from parties, the panel ordered that both sides submit written proposed findings of fact and conclusions of law by dates certain. The Bar timely filed its proposed findings of fact and conclusions of law. Respondent filed his findings of facts and conclusions of law one day late, which the Trial Panel accepted but noted "the consistency with which Respondent has failed to timely respond to deadlines throughout this proceeding."

## COUNT I

¶ 6 On July 3, 1995, James S. Carmin paid Respondent $500 to appear before the City Council of the City of Oklahoma City on Carmin's behalf to request a liquor license. Respondent performed this service for Carmin, but the City Council ruled against Carmin.

¶ 7 On July 6, 1995, Carmin hired Respondent and paid him $4,500 as a fixed attorney fee to prosecute a writ of mandamus to the District Court regarding the City Council's denial of the liquor license. On September 6, 1996, Carmin hired Respondent and paid him $3,000 to prosecute a libel action against some of those who had protested the granting of Carmin's liquor license. Carmin was to be reimbursed the $3,000 fee out of any proceeds of the suit and Respondent was to receive 25% of the remaining proceeds.

¶ 8 Only two months later, on November 8, 1995, Carmin discharged Respondent because Carmin believed his legal needs were not being met. The record does not reflect any mishandling of Carmin's case by Respondent at the point at which his services were terminated, and the Trial Panel so found. Nevertheless, Respondent did not keep time records. Several weeks after he discharged Respondent, Carmin made the first of numerous requests to Respondent for a refund. Respondent would not refund any of the fees to Carmin claiming that the fees were nonrefundable and that the client had fired him. The Trial Panel, therefore, concluded this matter was a fee dispute.

¶ 9 On July 1, 1996, the OBA mailed Respondent a letter pursuant to Rule 5.2, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991, ch. 1, app. 1–A, advising him of the grievance and further advising him to respond to the written grievance within twenty (20) days. This letter was not returned to the Office of the General Counsel. Respondent failed to file a written response to the grievance within the time allowed by Rule 5.2.

¶ 10 On July 26, 1996, the OBA mailed a second letter by certified mail, return receipt requested, to Respondent requesting a response within five (5) days. The letter was returned to the General Counsel's office on August 26, 1996, and was marked "unclaimed."

¶ 11 On September 12, 1996, Respondent was personally served a subpoena duces tecum requiring that he appear at the Bar Center on September 17, 1996. Respondent failed to appear. Respondent failed to file a written response to the complaint until February 28, 1996, four (4) days after the proceedings began on February 24, 1996.

## COUNT II

¶ 12   On May 4, 1995, Paula P. Green, a Texas resident, came to Oklahoma and paid Respondent $1,500, which constituted one-half of the agreed attorney's fee, to probate the uncontested will of Green's close friend. Respondent had been named in the will as the attorney to contact concerning probating the will. Respondent and Green appeared in court on November 20, 1995. Afterwards, Green attempted to contact Respondent on numerous occasions. With the exception of a telephone conversation on February 27, 1996, Respondent failed to return phone calls or communicate with Green. In April 1996, Green went to Respondent's office in Oklahoma City and found it locked.

¶ 13   During their original meeting, Green provided to Respondent the original life insurance policy on the decedent's life. Respondent never returned the policy to Green. Respondent also failed to advise Green that she needed to have an estate tax return prepared and filed. Consequently, a penalty was owed on the estate tax return.

¶ 14   On or about October 11, 1995, Green hired new counsel to proceed with the probate action. The petition for probate had to be amended because, as Green claimed, Respondent had not properly advised her as to how the heirs at law needed to be identified. Respondent did not provide an accounting of time spent on Green's legal matters, nor was the unused portion, if any, of the $1,500 Green paid refunded.

¶ 15   On June 10, 1996, Green wrote a letter to the OBA setting out her grievances. On June 27, 1996, the OBA mailed a letter to Respondent at his current roster address requesting him to communicate with Green within two (2) weeks about the allegations set out in her grievance. On August 6, 1996, and on August 23, 1996, the Oklahoma Bar Association mailed letters to Respondent's current roster address requesting that he communicate with Green within five (5) days about her allegations. Respondent failed to communicate with Green.

¶ 16   On October 7, 1996, the OBA mailed Respondent a letter pursuant to Rule 5.2, advising him of the grievance and further advising him to respond to the written grievance within twenty (20) days. This letter was not returned to the Office of the General Counsel. Respondent failed to file a written response to the grievance within the time allowed by Rule 5.2.

¶ 17   On October 28, 1996, the OBA mailed a letter to Respondent by certified mail, return receipt requested, requesting that Respondent respond to the OBA within five (5) days. Again, Respondent failed to file a written response to the complaint until after the first day of this proceeding.

## COUNT III

¶ 18   On or about July 1, 1996, Ashley Hale retained Respondent to represent her in a criminal matter and paid Respondent a $2,000 attorney's fee. Shortly thereafter, Ashley Hale executed a power of attorney and named her mother, Daphne Hale, as her attorney in fact. Daphne Hale then contacted Sergeant Kevin Katz of the Oklahoma City Police Department, who was an investigator in Ashley Hale's criminal matter. Sgt. Katz explained to Mrs. Hale that Ashley had fully cooperated with him and the police department on her case and on other cases which were initiated by Ashley's case. Sgt. Katz also advised Mrs. Hale that he would speak to the assistant district attorney, as well as to her attorney, and advise them both that Ashley had fully cooperated. Sgt. Katz attempted unsuccessfully to contact Respondent on several occasions. Respondent represented to Mrs. Hale that he had made an appointment to meet with Sgt. Katz and the assistant district attorney assigned to the case when, in fact, he had not done so.

¶ 19   After approximately two weeks passed and Respondent had done nothing on Ashley's case, Ashley called Respondent from the Oklahoma County jail and fired him. With the power of attorney executed by her daughter, Mrs. Hale requested an accounting of the $2,000 attorney's fee and a refund of the unused portion of the fee. She received no response to the requests. Daphne Hale thereafter filed a grievance with the OBA.

¶ 20 On October 24, 1996, the OBA mailed Respondent a letter pursuant to Rule 5.2, advising him of the grievance and further advising him to respond to the written grievance within twenty (20) days. This letter was not returned to the Office of the General Counsel. Respondent failed to file a written response to the grievance within the time allowed by Rule 5.2.

¶ 21 On November 15, 1996, the OBA mailed a second letter by certified mail, return receipt requested, to Respondent requesting a response within five (5) days. Respondent failed to respond.

## COUNT IV

¶ 22 In February of 1996, Christine Fritze, Attorney at Law, was hired to file a probate action and to obtain an injunction to recover personal property in the possession of Respondent's client that belonged to the estate. Fritze and Respondent met on one occasion and agreed that they would work together to get the matter resolved. Fritze made several attempts to communicate with Respondent in writing and by telephone over a period from February through September, 1996. The property Fritze was trying to obtain on behalf of the estate included the decedent's W–2 form and insurance documents.

¶ 23 On September 16, 1996, Christine Fritze filed a grievance with the OBA against Respondent for failing to communicate with her about the pending probate matter. She stated at the hearing that Respondent's failure to return her calls was all that she said Respondent did wrong.

¶ 24 On September 17, 1996, the OBA mailed a letter to Respondent requesting that he communicate with Fritze by September 28, 1996 about her allegations. Respondent failed to communicate with Fritze.

¶ 25 On October 30, 1996, the OBA mailed Respondent a letter to his current roster address pursuant to Rule 5.2, advising him of the grievance and further advising him to respond to the written grievance within twenty (20) days. This letter was not returned to the Office of the General Counsel. Respondent failed to file a written response to the grievance within the time allowed by Rule 5.2.

¶ 26 On November 20, 1996, the OBA mailed a second letter by certified mail, return receipt requested, to Respondent requesting a response within five (5) days. Respondent did not respond.

¶ 27 Respondent testified that he suffered from depression, beginning in February or March 1996, and that his failure to respond to the OBA's notification of grievances was caused by his condition. He also claimed that he had been diagnosed with depression by Dr. Kim Muncrief. Dr. Muncrief, however, testified that he had advised Respondent only as a friend, had not treated him and urged him to get treatment from another doctor.

¶ 28 Respondent claimed that he could not practice law between September and December 1996. The OBA's General Counsel, Dan Murdock, however, testified that he had seen Respondent at the Oklahoma County Court House in both October and November 1996. Further, Respondent failed to respond to the Oklahoma Bar Association's grievances, even after his depression had admittedly subsided in December 1996.

¶ 29 The record reveals that Respondent spent three years as a sergeant in Vietnam during the early years of the war as an advisor to a South Vietnamese Ranger company. He received five Purple Hearts, one as a result of having been bayoneted. In 1994 he returned to Vietnam, seeking what he characterized as "closure." He started having nightmares in the form of reliving his combat experience in early 1996, which Respondent contended cause him to sink into depression.

¶ 30 Respondent failed to comply with the OBA's continuing legal education requirements for 1996, did not pay his 1997 bar dues, and has previously been suspended for nonpayment of dues. Respondent received a private reprimand from the Professional Responsibility Commission on April 29, 1994, for misconduct involving neglect of client matters.

## DISCUSSION

### COUNT I—THE CARMIN MATTER

█ ¶31 The Trial Panel found that there is a lack of clear and convincing evidence that Respondent violated any duty in his representation in the Carmin matter. Rule 6.12(c), RGCP, provides, "To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence. . . ." The record indicates that Carmin hired Respondent to perform a variety of legal services, Respondent rendered service to his client and invested a reasonable amount of time in his client's legal matters, then the client fired Respondent only days after the Respondent reviewed a contract and rendered an opinion unfavorable to the client. After a careful review of the record, this Court finds that the proof in regard to professional misconduct failed to meet the clear and convincing evidence standard with respect to Count I.

¶32 The Trial Panel found that Respondent's failure to respond to the Carmin grievance violated the Rules Governing Disciplinary Procedure. We agree. In *State ex rel. Okla. Bar Ass'n v. Perry*, 1997 OK 29 ¶33, 936 P.2d 897, we held that a lawyer's obligation to respond to an OBA grievance is mandatory:

> Rule 5.2 [RGDP] clearly states (1) that the failure of an attorney to answer a grievance within twenty days after service 'shall' be grounds for discipline and (2) that the response 'shall' be in writing. The word 'shall' is mandatory. The language of Rule 5.2 leaves no room for interpretation regarding the proper form or time for filing a response. Respondent's proffered excuses for failing to respond to the OBA's grievance—in writing or otherwise—are meritless.

¶33 We are sympathetic to Respondent's difficulties in coming to grips with his difficult experiences in the Vietnam War. Nevertheless, our obligation to uphold the grievance system, which exists to protect the public, must come before our sympathy to Respondent. Our holding here with respect to Respondent's violation of Rule 5.2 by failing to respond to the OBA's grievance applies with equal force to the Trial Panel's conclusions of law on Counts II, III, and IV to the effect that Respondent's failure to respond violated the Rules Governing Disciplinary Procedure.

### COUNT II—THE GREEN MATTER

¶34 The Trial Panel concluded that Respondent's failure to keep his client informed of the status of the probate action and the necessity to file an estate tax return, along with his mishandling of the heirship, violated the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991, ch. 1, App. 3–A, and were cause for discipline. We agree that Respondent violated the following Rules of Professional Conduct: 1.1 (failing to provide competent representation), 1.3 (failing to act with reasonable diligence and promptness), 1.4 (failing to keep his client reasonably informed), and 1.5 (charging a fee that was unreasonable because he failed to do all of the work for which he charged).

### COUNT III—THE HALE MATTER

¶35 The Trial Panel concluded that Respondent's failure to prepare the case, his lack of diligence, and his misrepresentation to Mrs. Daphne Hale violated the Rules of Professional Conduct and were cause for discipline. We hold that Respondent violated the following Rules of Professional Conduct: 1.1 (failing to provide competent representation); 1.3 (failing to act with reasonable diligence and promptness), 8.4(c) (misrepresenting to Mrs. Hale that he had scheduled a meeting when he had not scheduled such a meeting was conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1.5 (charging a fee that was unreasonable because all the work charged for was not done and he failed to account for the unused portion of the fee).

### COUNT IV—THE FRITZE MATTER

¶36 The Trial Panel concluded that Respondent violated ORPC Rule 8.4(d) because his conduct was "prejudicial to the administration of justice," Rule 3.4 because he obstructed another party's access to evidence

and ORPC Rule 4.4 because he intended to delay Fritze's client. The record simply does not support the Trial Panel's conclusion on this count. Ms. Fritze conceded on cross examination that the only thing she was complaining about Respondent having done wrong was that "he didn't return [her] calls and communicate with [her]."

■ ¶37 In a disciplinary proceeding it is important to remember that a lawyer's primary obligation is to represent his client. Offending one's opponent is not grounds for discipline unless it amounts to obstruction of justice or violates some other well defined rule. Ms. Fritze had no legally protected right to rely on Respondent to retrieve the estate's property from his client. Ms. Fritze admitted that she had not filed an application in the probate court for an order to deliver the property. Respondent's failure to communicate with Ms. Fritze did not prejudice the rights of his client. Thus, it was not professional misconduct.

■ ¶38 Rule 8.4(d) may not be used to establish professional misconduct unless the complained acts were the sort that were "previously disapproved by case law, statute, court rules or the 'lore of the profession.'" *State ex rel. Okla. Bar Ass'n v. Bourne,* 1994 OK 78 ¶6, 880 P.2d 360, 361. Here it appears that the conduct complained of consisted of no more than Respondent's failure to return his opponent's phone calls, and that is not professional misconduct. Nevertheless, for the reasons indicated in our discussion under Count I, Respondent's failure to respond the OBA's grievance was a violation of Rule 5.1, which is professional misconduct and calls for discipline.

## DISCIPLINE

¶39 The Trial Panel recommends that Respondent be suspended from the practice of law for two years and one day. We agree with the Trial Panel's recommendation. Although we have found that the Trial Panel's recommended discipline for Respondent's conduct in the Fritze matter was not supported by the record, we believe that the balance of the findings concerning Respon-

dent's misconduct clearly supports the Trial Panel's recommendation for discipline.

■ ¶40 Our responsibility in a bar disciplinary proceeding "is not to punish but to inquire into the lawyer's continued fitness, with a view toward safeguarding the interest of the public, the courts, and the legal profession." *State ex rel. Okla. Bar Ass'n v. Adams,* 1995 OK 17 ¶4, 895 P.2d 701, 704. We are concerned by Respondent's consistent failure to respond in a timely manner to the OBA's grievances as provided by the rules of this Court. Further, one of the findings here involves misrepresentation. Under these circumstances we order that Respondent be suspended from the practice of law for a period of two years and one day. Respondent is further ordered to pay the costs of this proceeding in the amount of $3,627.00 within thirty (30) days of the date this opinion becomes final.

RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS.

¶41 KAUGER, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

¶42 SUMMERS, V.C.J., and ALMA WILSON, J., concur in part, dissent in part.