1999 OK 101

STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

John Nathan BREWER, Respondent.

No. 4399.

Supreme Court of Oklahoma.

Dec. 21, 1999.

---

1. Certiorari review of the Court of Civil Appeals' opinion in *Williams* was not sought.

Allen.J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Raymond D. Munkres, Oklahoma City, for Respondent.

LAVENDER, J.

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, John Nathan Brewer, with two counts of neglect of client matters, and two counts of failure to respond to requests for information from the Oklahoma Bar Association to answer formal grievances by two of the respondent's clients, all in violation of Rules 1.1, 1.3, 1.4(a), and 3.2 of the Oklahoma Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3-A, and rule 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S. 1991, ch. 1, app. 1-A. The parties stipulated to the facts in this matter, which were submitted the day of the hearing. In its report of findings of fact and conclusions of law, the Professional Responsibility Tribunal recommended public censure of the respondent.

## COUNT I

¶ 2 Regarding Count I of the Complaint, the parties stipulated that Marilyn Manger retained the respondent in January 1982 to probate the estate of Manger's mother. On July 28, 1982, the respondent accepted $500.00 as attorney fees from Manger. Between August 1995 and February 1996, Manger paid the respondent an additional $600.00 at his request. Although the respondent thought he was responsible only for beginning the probate and securing the sale of the decedent's residence, Manger understood that he would complete the probate. The respondent's initial work was performed in a professional and timely manner. Manger and her siblings agreed that the AT & T stock of their deceased mother would be transferred to Manger. This division was reflected in the itemization of the estate's

assets delivered to the respondent in 1982 or 1983. In August 1995, Manger delivered the stock certificates to the respondent to transfer ownership of the stock to Manger. The respondent told Manger he would secure the transfer of the stock, but the respondent decided soon thereafter that the stock should more properly be transferred in the final Decree of Distribution. He neglected to relay that information to his client. Over the years, the respondent repeatedly assured Manger and her husband that he was still working on the probate. In November 1995, Manger wrote the respondent asking that he complete the matter, but the respondent failed to answer. In March 1998, Manger wrote the respondent by certified mail to complain and again he failed to respond. At the time of the hearing before the Professional Responsibility Tribunal, the respondent remained in possession of the stock certificates and had still not secured the transfer of ownership to Manger, nor had he completed the probate.

¶ 3   The respondent argued in his Brief–in–Chief, and the transcript of the hearings reflect that he had begun the probate at the request of an attorney friend, Manger's husband. He agreed to conduct the proceeding at a greatly reduced fee, and intended from the beginning to carry the matter through only to the sale of real property and distribution of the proceeds and other assets of the estate by agreement of the heirs. Manger's mother died on January 30, 1982, intestate. The respondent prepared a petition for probate, letters of administration, obtained the necessary waivers from the other heirs and filed the petition and secured Manger's appointment on February 18, 1982. He filed notice to creditors the same day. He secured an order appointing appraisers and prepared and filed an inventory and appraisement. He subsequently prepared and filed back income tax returns for the estate for the years 1977 through 1982, and the necessary estate tax return, filed June 1, 1982, resulted in obtaining a tax release on July 13, 1982. He filed pleadings necessary to sell the real property, and obtained the order confirming the sale. He did a title opinion and two special deeds to cure any title defects. He testified that the probate was essentially completed by mid-July 1982. He believed the heirs were happy when they received the assets of the estate to which they were entitled. About three years prior to the bar discipline hearing, the respondent stated that he learned from his attorney friend, now Manger's ex-husband, about a continuing problem with the stock. When the respondent was asked if the problem regarding the stock certificates would have been solved had he prepared a final account, petition for an order approving the account, and for distribution and discharge, the respondent answered that it would not. He added that the final decree would simply transfer the stock to Manger's name by order, but that the transfer would still have to be accomplished for the transfer agents. He admitted that he had not properly communicated with his client, and accepted full responsibility for that.

¶ 4   Rule 1.1 [1] of the Rules of Professional Conduct provides the requirements for competent representation, that is, "legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Under this description of competent representation, the facts do not support a lack of competent representation; the facts support a lack of diligence and promptness in representing Manger, in violation of Rule 1.3,[2] and the facts support a failure to keep his client reasonably informed of the status of the probate in response to her reasonable requests for information, in violation of Rule 1.4(a).[3] The facts also support a violation of Rule

---

**1.** Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

**2.** Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**3.** Rule 1.4(a) provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

3.2,[4] which requires a lawyer to make reasonable efforts, consistent with the interests of the client, to expedite litigation.

## COUNT II

¶ 5 Regarding Count II of the Complaint, the parties stipulated that on May 26, 1998, the Bar Association mailed the respondent a letter enclosing a copy of the Manger grievance, and requested a response. The letter added that failure to respond within twenty days of service would be grounds for discipline, citing Rule 5.2[5] of the Rules Governing Disciplinary Proceedings. When the respondent did not answer the letter, the Bar Association mailed another letter by certified mail on June 30, 1998, advising that if he failed to contact the Office of General Counsel within five days the Professional Responsibility Commission would issue a subpoena requiring his sworn testimony and the production of relevant books and records. The return receipt on the letter revealed that an agent of the respondent accepted the letter on July 1, 1998, at the respondent's official roster address.

¶ 6 The respondent replied by letter on July 16, 1998, acknowledging the receipt of the June 30th letter and advising the Office of General Counsel that he was leaving town, but would submit a detailed response upon his return, which would be the evening of July 22nd. The respondent, however, never filed a written response to the Manger grievance. The Professional Responsibility Commission issued a subpoena, and the respondent was deposed on August 26, 1998.

4. Rule 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

5. Rule 5.2 of the Rules Governing Disciplinary Proceedings provides: "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of

¶ 7 Rules 5.2 requires that a lawyer respond within twenty days after the service of a grievance against that lawyer. The rule provides that the General Counsel may allow further time. Failure to answer is grounds for discipline. The facts reveal that the General Counsel gave the respondent additional time, and after promising to answer, the respondent failed to do so. The respondent violated the applicable provisions of Rule 5.2.

## COUNT III

¶ 8 In Count III, the complainant alleged neglect of a client's bankruptcy case. The stipulations reveal that Jacqueline Bouffard paid the respondent $500.00 to represent her in a bankruptcy. Mr. Bouffard was uncertain whether to join his wife, but by August 1997, he decided he would not. At that time the respondent knew that he was to prepare a bankruptcy petition only for Mrs. Bouffard. Later that month her vehicle was repossessed from her driveway. She immediately reported this to the respondent, but was unable to communicate with him after that. She telephoned him "three or four or five times" but received no return call. She went to his office at least once, but was unable to talk to the respondent. The respondent did not file a bankruptcy petition for Bouffard. She retained another attorney in October 1997, who secured her discharge in bankruptcy. On October 26, 1997, Bouffard wrote a letter to the respondent complaining of his failure to return her telephone calls, and she requested a partial refund, but the respondent did not answer the letter.

the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."

Finally, on January 19, 1998, Bouffard sent a letter by certified mail again requesting a partial refund. Again the respondent did not answer the letter.

¶ 9 In his Brief-in-Chief, the respondent summarized his testimony concerning his representation of Mrs. Bouffard. He testified that both came to him for legal counsel regarding personal financial difficulties. He examined financial documents and counseled with both, meeting with them and their accountant on multiple occasions. He discussed alternatives and problems associated with bankruptcy. Mr. Bouffard notified the respondent that he was leaving the area for several weeks and gave the respondent a check for $500.00. The respondent confirmed that if Mr. Bouffard were to file a Chapter 7 bankruptcy, that amount would be agreeable as a fee, although the filing fee in the approximate amount of $175.00, would also have to be paid. The respondent testified that Mr. Bouffard ultimately rejected his taking bankruptcy, but the respondent understood that Mrs. Bouffard wished to file individually, and wanted him to represent her. However, he did not complete the schedules or file the necessary petition. He has refunded to Mrs. Bouffard the full amount of the retainer paid by Mr. Bouffard. Concerning Mrs. Bouffard's repossessed vehicle, the respondent answered that she testified during the hearing that she intended to let the vehicle go back in any event, and that with the refund of the retainer, she had suffered no other detriment.

¶ 10 The stipulated facts do not support a conclusion that the respondent lacked competence to represent Mrs. Bouffard in a bankruptcy matter, in violation of Rule 1.1 of the Rules of Professional Conduct. The facts support a lack of diligence and promptness in representing her, in violation of Rule 1.3 of the Rules of Professional Conduct. The facts also support a failure to keep Mrs. Bouffard reasonably informed of the status of the bankruptcy in response to her requests for information, in violation of Rule 1.4(a), of the Rules of Professional Conduct.

## COUNT IV

¶ 11 The stipulations concerning Count IV are similar to those in Count II. The complainant mailed a letter to the respondent containing a copy of Mrs. Bouffard's grievance on March 21, 1998, and requested a written response within two weeks. After receiving no answer, the complainant mailed a second letter requesting a written response within five days. When the respondent failed to answer, the grievance was referred for formal investigation by the Office of General Counsel. On June 8, 1998, the complainant mailed a letter to the respondent requesting a written response to Bouffard's grievance within twenty days, and then advised that a failure to answer would be grounds for discipline pursuant to Rule 5.2 of the Rules Governing Disciplinary Proceedings. On June 30, 1998, the complainant mailed a letter by certified mail requesting a written response within five days. That certified letter referred the respondent to both the Manger and Bouffard grievances. The respondent's answer, referred to in our discussion of Count II, promised a detailed response after the respondent's return to Oklahoma on July 22. Like the Manger grievance, the respondent never filed a written answer to the Bouffard grievance and accordingly was deposed on August 26, 1998, concerning both grievances. As stated above, the facts support a violation of Rule 5.2.

## MITIGATION AND ENHANCEMENT

¶ 12 In its report to this Court, the trial panel concluded that the respondent's misconduct was not motivated by malice or design. Character witnesses testified that the respondent is man of good character and that his misconduct was an anomaly. The respondent has served the Bar Association in various capacities through several activities. He refunded the $500.00 to Mr. and Mrs. Bouffard and promised to complete Mrs. Manger's probate within thirty days of the hearing before the trial tribunal. Finally, he testified that he has reduced his case load drastically to ensure similar incidents do not occur in the future.

¶ 13 In contrast to the mitigating evidence, and the major factor against a private reprimand is the fact that the respondent

received a reprimand in 1996 for failure to respond to the Office of General Counsel in connection with another grievance. The private reprimand reveals that the respondent could have resolved the matter by simply sending a letter to a potential heir in a probate matter. Because the respondent chose not to answer the inquiries from the Office of General Counsel, he was deposed as he has been in the matter now before this Court. The grievance was not found to be a cause for discipline. The private reprimand resulted solely from the failure of the respondent to answer the inquiries from the Office of General Counsel, in violation of Rule 5.2 of the Rules Governing Disciplinary Proceedings.

## DISCIPLINE

¶ 14 The Trial Panel recommended that the respondent be publicly censured. In his Brief–In–Chief the respondent asserts that a private reprimand is appropriate. In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive original jurisdiction, not as a reviewing tribunal. *State ex rel. Oklahoma Bar Association v. Mayes,* 1999 OK 9, ¶ 22, 977 P.2d 1073, 1081. This Court independently determines the proper discipline. *State ex rel. Oklahoma Bar Association v. Barnett,* 1997 OK 61, ¶ 2, 940 P.2d 493, 495.

¶ 15 This Court has imposed varying degrees of discipline on lawyers who neglected client matters. *State ex rel. Oklahoma Bar Association v. Green,* 1997 OK 39, ¶ 41, 936 P.2d 947, 957. The discipline imposed has ranged from public censure to a two year suspension.[6] Public censure or rep-

rimand is an appropriate discipline when an attorney is guilty of neglect of a legal matter without affirmative acts of harmful conduct against the client. *Green,* 1997 OK 39, ¶ 42, 936 P.2d at 957. The facts of this disciplinary matter are closer to the cases in which this Court imposed public censure as the discipline for the lawyer involved. Accordingly, we order that the respondent be publicly reprimanded by the publication of this opinion. The respondent is also ordered to pay the costs of this disciplinary proceeding in the amount of $1,851.21 within ninety (90) days from the date this opinion becomes final.

¶ 16 **RESPONDENT PUBLICLY CENSURED. COSTS CHARGED TO RESPONDENT.**

¶ 17 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER and BOUDREAU, JJ., concur.

¶ 18 OPALA, J., with whom KAUGER and WATT, JJ., join, dissenting. I would impose a more severe discipline by suspending the respondent's license to practice law.

---

**6.** *State ex rel. Oklahoma Bar Association v. Busch,* 1992 OK 68, ¶ 12, 832 P.2d 845, 847–848, lists the following cases and recites the discipline imposed: "We have imposed a two year suspension, *State ex rel. Oklahoma Bar Association v. Maynard,* 494 P.2d 655 (Okla.1972), (default judgment against client); a three-month suspension, *State ex rel. Oklahoma Bar Association v. Denney,* 617 P.2d 1351 (Okla.1980) (failure to file required brief resulted in dismissal of appeal), *State ex rel. Oklahoma Bar Association v. Latimer,* 499 P.2d 399 (Okla.1972), (attorney-administrator of two estates neglected to file reports), and a public censure, *State ex rel. Oklahoma Bar Association v. Foster,* 454 P.2d 654 (Okla.1969), (attorney failed to file client's suit), *State ex rel.*

*Oklahoma Bar Association v. Braswell,* 663 P.2d 1228 (Okla.1983), (attorney failed to file suit), *State ex rel. Oklahoma Bar Association v. Blackburn,* 812 P.2d 379 (Okla.1991), (attorney failed to file brief in Court of Criminal Appeals and record reviewed for only fundamental error), *State ex rel. Oklahoma Bar Association v. Lobaugh,* 781 P.2d 806 (Okla.1988), (failed to file case and misrepresented this to client); *State ex rel. Oklahoma Bar Association v. Landman,* 784 P.2d 1064 (Okla.1989), (failed to file various motions). *State ex rel. Oklahoma Bar Association v. Borders,* 777 P.2d 929, 930 (Okla.1989), (failed to communicate with mother of client and lost abstract that had to be replaced by client)."