2008 OK 38

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**D. Joel HULETT, Respondent.**

**SCBD No. 5350.**

Supreme Court of Oklahoma.

April 15, 2008.

Janna Dunagan Hall, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

D. Joel Hulett, Pro Se, Tulsa, OK, for Respondent.

## OPINION

WATT, Justice.

¶ 1 On October 1, 2007, the Oklahoma Bar Association (the Bar) filed a two-count complaint against Respondent, D. Joel Hulett, alleging attorney misconduct in violation of Rules 1.1,[1] 1.3,[2] and 1.4,[3] Oklahoma Rules of

---

1. **Rule 1.1. Competence**
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

2. **Rule 1.3. Diligence**
 A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4, ORPC (since amended), in effect at the time of the grievance, provided:

 **Rule 1.4. Communication**
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the

Professional Conduct (ORPC), 5 O.S.2001, Ch. 1, App. 3–A, and Rule 5.2,[4] Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A. This disciplinary proceeding was brought under the provisions of Rule 6, RGDP, 5 O.S.2001, Ch. 1, App. 1–A.

## STIPULATIONS

¶ 2 In the present case, the Bar and Hulett stipulated that Hulett violated Rules 1.3 and 1.4, ORPC, and Rule 5.2, RGDP, as to Count I, and Rules 1.1, 1.3, and 1.4, ORPC, and Rule 5.2, RGDP, as to Count II. Additionally, the Bar and Hulett stipulated to discipline of two years and one day which was also recommended by the Trial Panel. The imposition of discipline of two years and one day is tantamount to a disbarment because the same procedures for reinstatement are required. See *State ex rel. Oklahoma Bar Association v. Pacenza*, 2006 OK 23, 136 P.3d 616; Rule 11.1, RGDP, 5 O.S. Supp. 2002, Ch. 1, App. 1–A.[5] The lawyer seeking reinstatement must "present stronger proof of qualifications than one seeking admission for the first time." See Rule 11.4, RGDP.

■ ¶ 3 This Court is not bound by the stipulations of the parties, even when they stipulate to misconduct. See *State ex rel. Oklahoma Bar Association v. Taylor*, 2003 OK 56, 71 P.3d 18. However, a stipulation that certain rules were violated advises this Court that a respondent acknowledges par-

ticipation in unethical conduct which is considered when discipline is imposed. See *State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, 23 P.3d 268, citing *State ex rel. Oklahoma Bar Association v. Landman*, 1989 OK 162, 784 P.2d 1064, 1065.

■ ¶ 4 Our review of the record is *de novo*, in which we conduct a non-deferential, full-scale examination of all relevant facts to determine if allegations of misconduct are established by clear and convincing evidence. *State ex rel. Oklahoma Bar Association v. Garrett*, 2005 OK 91, 127 P.3d 600, citing *Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18, 21; Rule 6.12(c), RGDP, 5 O.S.2001, Ch. 1, App. 1–A.

## COUNT I

■ ¶ 5 The Bar received a grievance against Hulett from Frank Bencker on March 12, 2007. Mr. Bencker alleged he and his wife paid Hulett to prepare a Will and Trust for them on or about November 1, 2005. Mr. Bencker alleged that he told Hulett he was preparing to have surgery at the end of that month, that he wanted to get his estate in order, and that time was of the essence. However, Hulett did not complete the work within the designated time and had not responded to Mr. Bencker's phone calls.

¶ 6 The Bar contacted Hulett by mail on March 16, 2007 and June 7, 2007, with directions to respond to Bencker's grievance by specified deadlines. Hulett failed to re-

---

client to make informed decisions regarding the representation.

4. **RGDP, Rule 5.2. Investigations**

 After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless

the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

5. Rule 11.1, RGDP, provides the exclusive procedure for reinstatement of "[a] person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or **who has been suspended from the practice of law for a period of longer than two (2) years or disbarred,** or who has resigned membership in the Association . . . ." [emphasis added].

spond. On July 3, 2007, the Bar sent Hulett a letter by certified mail, advising him that a formal investigation had been opened. The Bar requested a response from him within five (5) days. He still failed to respond.

¶ 7 On August 3, 2007, the Professional Responsibility Commission (PRC) issued a subpoena *duces tecum* to Hulett, directing him to appear for a deposition on August 23, 2007. On August 21, 2007, Hulett mailed to the Benckers a complete and executed will and trust instrument, a refund of their $275.00 fee, and a letter of apology. He testified that he had previously sent the executed will and trust instruments to the Benckers on January 13, 2006, but that the documents were returned to him in the mail because the Benckers had a new address. Although he completed the work, he admitted he failed to be diligent about getting it to them.

## COUNT II

■ ¶ 8 On April 12, 2007, the Bar received a grievance from Mr. Harry Gibson, alleging Hulett's misconduct during his representation of Mr. Gibson and his wife in 2005.[6] The Gibsons alleged they had hired Hulett to represent them in a replevin action in state court brought by Snap–On Credit, L.L.C., a secured creditor in their bankruptcy case filed in 2002.[7] They alleged a judgment was entered against them because of Hulett's neglect of their case.

¶ 9 The Bar sent notice of the grievance to Hulett on April 19, 2007, requesting him to respond within two weeks. The next notice to Hulett was sent May 14, 2007, requesting a response within five days. Hulett sent a letter to the Bar by facsimile on May 23, 2007, stating he was placing a response in the mail that day which would fully resolve the matter and that he would update Mr. Gibson. However, Hulett failed to respond to either of the Bar's letters. On July 6, 2007, the Bar mailed a letter to Hulett advising him that a formal investigation was being opened. He was directed to respond within twenty days. Hulett still gave no response. On August 3, 2007, the Bar issued a subpoena *duces tecum*, directing Hulett to appear for a deposition. Hulett appeared on August 23, 2007 and testified, admitting the judgment was entered against his client as a result of his neglect.

¶ 10 The Gibsons owed Snap–On for the purchase of tools which Mr. Gibson used in his business. A reaffirmation agreement was not signed in the bankruptcy case which would have allowed the Gibsons to keep the tools as long as they continued making the payments.[8] Hulett explained to the Gibsons that he did not do litigation, but they persisted until he agreed to make inquiries on their behalf, advise them on the law, and to intervene for them with Snap–On. He testified he attempted to work out an agreement which would allow Snap–On to repossess certain tools which were last purchased,[9] but which would allow other tools to remain with the Gibsons. Despite making arrangements for Snap–On to obtain specific items at specific times, Hulett testified the Gibsons did not fully cooperate, having either moved the tools from the agreed location, or by failing to meet at the designated time. Hulett testified he thinks Snap–On's lawyers consequently became impatient. Snap–On filed a replevin action and filed a motion for summary judgment to which Hulett did not respond. Snap–On obtained an order for delivery and repossessed all of Mr. Gibson's tools, even those which Snap–On agreed to leave with Mr. Gibson. Hulett also testified he remembered drafting an answer on the Gib-

---

6. Mr. Gibson initially filed his grievance with the Tulsa County Bar Association which forwarded it to the Bar.

7. The bankruptcy case was filed by a different attorney on May 16, 2002, in the United States Bankruptcy Court for the Northern District of Oklahoma. The record shows the Gibsons received a discharge on August 19, 2002, under 11 U.S.C. § 727, in their case filed under Chapter 7 of the Bankruptcy Code.

8. Apparently, the payments intended for the secured debt were applied to an open account with an existing balance.

9. Hulett explained the parties determined which tools were subject to repossession as the "last in, first out" method used in Bankruptcy Court with secured creditors.

sons' behalf, but that the docket sheet showed an answer was never filed. He also stated he never looked for the answer in preparation for the hearing before the Trial Panel. Hulett testified he was unaware of the Snap–On judgment initially because his employee, a law school graduate in charge of docketing, apparently placed the motion for summary judgment in the file without docketing it. The graduate later left his firm.[10] However, he admitted he never filed a motion to vacate the judgment.

## FACTS

¶ 11 Hulett appeared *pro se* at the PRT hearing and presented no witnesses or evidence. He filed no response brief in this Court and waived his right to file a post-trial response brief. Although Hulett testified he had closed his law office and had withdrawn his website and legal advertisement, he also testified that he wished to keep his law license. He described being a member of the Bar as a source of "pride". He also testified that he anticipated the possibility of providing legal advice on contract matters in his new business pursuits of film production and fund raising. Additionally, he testified that his previous Chapter 13 bankruptcy cases, all of which have been confirmed, might require further representation for issues arising in the future. He stated he had arranged for other counsel to take all but two of his cases and expected to work out an arrangement with other lawyers for those in the near future.

¶ 12 Hulett testified that he primarily practiced bankruptcy law and that when the bankruptcy laws changed in October, 2005, he was incredibly busy. He stated he contacted everyone who had been through his office for the last five years about the changes to be sure there were no surprises and that his clients had what they needed. He lost his bankruptcy assistant during that time. He looked for other lawyers to take all of his cases. Hulett described himself during that period of time as "overwhelmed" and "burned out." He also described himself at that time as slipping deeper into an "emotional fog" or as being in a "complete frozen state." When asked what was overwhelming, he answered, "everything, every day," but could not explain it. He stated everything was "spiraling down," and he knew he needed to get away from the practice of law. It also affected his personal life and his thirty year marriage. Still, he could not point to any reason for reaching that state.

¶ 13 He testified that at his deposition the Bar's Counsel, Ms. Hall, told him about the Bar's program "Life Focus." It provides counseling for non-alcohol and non-drug related problems for members of the Bar. He testified it had helped tremendously as to the "overwhelming nature of things" and that he was still attending counseling sessions. He stated the personal areas of his life, including his marriage, had "turned around" and that he was getting his life in order. He also said he was trying to take responsibility for the problems in his practice which his counselor describes as trying to get back "into integrity" and to move forward responsibly.

¶ 14 Hulett testified that his counselor suggested he see a physician for his "acute depression." He was told it was "medium high", not "severe", depression. He went to his regular doctor. Although Hulett is not taking medication for depression now, they discussed medication he had taken in the past for depression and anxiety, how it had not worked, and how it affected medication he was taking now.[11] He testified he declined to begin taking anti-depressants because the counseling appeared to be helping him. They agreed he would return to see the doctor in ninety days before making a decision about taking an anti-depressant.[12]

---

**10.** Hulett stated, however, that he knew it was his ultimate responsibility to remain aware of the case.

**11.** He testified he is not presently taking medication for depression, but he is taking medicine for blood pressure and for keeping body sugars down.

**12.** The Trial Panel Report contains a reference to the depression and raises a question as to whether this case should have been brought under Rule 10, RGDP, Suspension for Personal Incapacity to Practice Law, but the issue was not addressed again. Moreover, we determine this is not an appropriate case for a Rule 10 proceeding. The only evidence of Hulett's depression is his testi-

This ninety day period ended approximately a month after the hearing, and the record does not contain evidence of a follow-up appointment.

## DISCIPLINE

■ ¶ 15 The Bar and Hulett stipulated to discipline of two years and one day. The Bar argues that a lawyer's obligation to respond to an OBA grievance is mandatory. It cites *State ex rel. Oklahoma Bar Association v. Spadafora*, 1998 OK 28, 957 P.2d 114, *State ex rel. Oklahoma Bar Association v. Perry*, 1997 OK 29, 936 P.2d 897, and *State ex rel. Oklahoma Bar Association v. Evans*, 1994 OK 45, 880 P.2d 333, in support of its contention.

¶ 16 In its report, the Trial Panel also recommended discipline of two years and one day.[13] The Panel acknowledged the Bar's citations of authority to *Spadafora* and *Evans*, stating that in both cases, lawyers were suspended for two years and one day based on conduct similar to Hulett's. However, while the cases cited involved client neglect and failure to respond to the Bar, they also contained misconduct not present here. In *Spadafora*, supra, the Court found instances of attorney misrepresentations in a criminal matter, involving dishonesty, fraud, and deceit, in addition to the charges of failure to respond to the Bar and neglect of client. In *Evans*, supra, in addition to issues of client neglect and a blatant disregard for the Bar's grievance procedures,[14] he also showed a lack of legal competence and indifference to his client in a criminal case.[15] Those issues are not present here, and we find the cases inapplicable to support the imposition of suspension for two years and one day as stipulated in the cause before us.

¶ 17 On the other hand, we find that Hulett's misconduct warrants discipline. The discipline imposed by this Court on lawyers who have neglected client matters ranges from public censure to a two-year suspension. See *State ex rel. Oklahoma Bar Association v. Brewer*, 1999 OK 101, 998 P.2d 605.[16] Public censure has been imposed for

---

mony. There is no medical evidence corroborating Hulett's condition, or that the condition resulted in his incapacity to practice law.

13. The Panel cited *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, ¶ 46, 37 P.3d 763; *State ex rel. Oklahoma Bar Association v. Phillips*, 1990 OK 4, 786 P.2d 1242; *State ex rel. Oklahoma Bar Association v. Butler*, 1995 OK 88, 1995 OK 89, 903 P.2d 872; and *State ex rel. Oklahoma Bar Association v. Adams*, 1995 OK 17, ¶ 19, 895 P.2d 701, 706, as authority.

14. As to allegations of Evans' failure to respond to the Bar, he stated he did it intentionally because he found it "silly" to require him to do so.

15. His actions included the failure to appear at a preliminary hearing, failing to request that another hearing be set, failing to order a transcript of the hearing, and failing to review the exhibits or to interview the State's witnesses. Additionally, Evans failed to cross-examine the State's eyewitness and failed to present evidence during the second phase of a criminal trial, after former conviction of a felony, claiming he did not understand the procedure. He advised his client that if he did not testify, the State could not present evidence of his prior convictions. He also failed to negotiate with an assistant district attorney on a plea agreement on his client's behalf for the reason that "[b]ecause he [Evans] 'did not have to do his [Hawley's] time,' he did not have to negotiate with the district attorney." *Evans*, 1994 OK 45, ¶ 4, n. 9, 880 P.2d at 336, n. 9.

Upon consideration of the quality of Evans' representation of Hawley during a hearing on his request for post-conviction relief, the district court modified his 40–year sentence by ordering him to serve ten years rather than twenty-five years as previously ordered.

16. In a case with facts similar to the present case, *State ex rel. Oklahoma Bar Association v. Brewer*, supra, this Court imposed a public censure and ordered the lawyer to pay costs. Although there had been some dispute as to the extent of Brewer's intended representation in a probate case, he failed to file a final account or to seek the orders necessary to complete the case for three years. He also admitted he failed to communicate properly about the need to accomplish the transfer of stock to his client through transfer agents. In a separate count in the complaint, Brewer admitted he did not file a bankruptcy petition which a client wished to file and never completed the bankruptcy schedules for her. The client's vehicle was repossessed, although there was testimony the client had intended to give it up in any event. Brewer refunded the client's attorney fees, resulting in no detriment suffered by the client. Also included in the complaint were two separate counts for his failure to respond to the Bar regarding the two grievances, in violation of Rule 5.2, RGDP. Similar to the present case, Brewer did not respond until he received a subpoena *duces tecum* and notice to appear for deposition. The Court found the facts in *Brewer* were closer to the cases

neglect of legal matters without affirmative acts of harmful conduct against the client. See *Brewer*, 1999 OK 101, ¶ 15, 998 P.2d 605, 610.

¶ 18 In the present case, Hulett's neglect caused harm to his clients. Although he finally completed his work for the Benckers and returned their fees, he also brought discredit to the Bar and the legal profession by his lack of diligence in finishing the task. Mr. Bencker was obviously seeking peace of mind by his desire to have his estate in order before a scheduled surgery. Mr. Bencker thus did not receive the benefit of his bargain with Hulett, who understood that time was of the essence.

¶ 19 The Gibsons were also harmed by the repossession of all of Mr. Gibson's tools. We acknowledge that Hulett did not create the unfavorable situation in which the Gibsons found themselves as a result of their bankruptcy. However, although Hulett explained he did not do litigation, he agreed to represent them. Taking on more work than can be adequately handled does not relieve a lawyer from the reasonable diligence requirement of Rule 1.3, ORPC. See *State ex rel. Oklahoma Bar Association v. Giessmann*, 1997 OK 146, 948 P.2d 1227. He attempted to use his bankruptcy expertise to enter into an arrangement with Snap–On to prevent a total loss to the Gibsons. Moreover, the failure of that arrangement does not appear to be totally Hulett's fault. However, he had a duty to them to follow through by filing an answer on their behalf and ultimately, to attempt to vacate the judgment entered against them.

¶ 20 Hulett has also admitted that he failed to respond to the Bar when notified of each grievance. He offers little explanation, other than being overwhelmed and suffering from "burn out." His inaction caused the Bar to utilize greater resources in time and money. It also created a greater time delay in addressing the complaints of his clients who had already suffered from his procrastination.

imposing a public censure as the appropriate discipline, rather than a two-year suspension. However, a distinguishing fact is the lack of harm, except for the delays, to Brewer's clients.

## Prior Misconduct

¶ 21 Hulett was given a private reprimand by the PRC on February 23, 2007, for violation of Rule 5.2, RGDP, for a prior grievance which was not raised in the complaint. Hulett testified that his client was not the complaining party, but the opposing party in the case. When asked why he failed to respond to the Bar in the prior case, he stated, "Again, something that doesn't make any sense at all. I had a good answer. I did a good job.... I think it would have been summarily reviewed, investigated and closed. And I didn't. And it makes no sense."

¶ 22 Despite receiving the private reprimand on February 23, 2007, which warned that "any future meritorious grievance against you will not be disposed of this lightly," Hulett continued to ignore the Bar when notified of the Bencker and Gibson grievances. The first notice from the Bar in Count I of the complaint was mailed to Hulett on March 16, 2007, and the last notice was mailed to Hulett on August 3, 2007, directing him to appear for a deposition.

¶ 23 If a pattern of neglect is shown upon an inquiry of a lawyer's professional history, it will be a factor in tailoring the appropriate discipline. See gen., *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, 37 P.3d 763; *State ex rel. Oklahoma Bar Association v. Bolton*, 1994 OK 53, 880 P.2d 339.

## Mitigation

¶ 24 Although we must consider the prior private reprimand in imposing the appropriate discipline, we also consider the curative steps he took to face his prior misdeeds after the private reprimand, including counseling. Hulett admits he neglected his clients and failed to respond to the Bar. Although he did not respond until after he was served with a subpoena *duces tecum*, he did finally take the steps necessary to deliver the will and trust instrument to the Benckers. Additionally, Hulett returned their fees and wrote a letter of apology. While these actions do not ne-

In the present case, the Gibsons lost their tools because Hulett failed to respond to a motion for summary judgment.

gate his misconduct, it does show an attempt to correct his lack of diligence in representing the Benckers.

¶ 25 Of his twenty-one-year practice, Hulett's pattern of neglect is confined to the last two years in which he described feeling "overwhelmed," "lost," and "in a fog." He also testified he practiced primarily bankruptcy law. The law changed in October, 2005, at which time he lost his bankruptcy assistant and was incredibly busy. After the laws changed, he was "burned out." To his credit, and with help from the Bar, he entered into a counseling program which has helped him sort through issues with the Bar, his business, and his personal life. They separated problem areas, figured out what his approach has been, and got those things resolved. He stated he is trying to "get into integrity" and to be responsible. He is attempting to move forward for positive things.

¶ 26 Finally, Hulett closed his law office and tried to find substitute counsel for his cases. Although he initially told the Gibsons that he did not engage in litigation, he did agree to help the Gibsons through making inquiries with Snap–On Credit. He worked out an arrangement by which Mr. Gibson could relinquish some of the later purchased tools, and Snap–On could repossess other tools, to avoid a complete loss to either party. However, Hulett testified the Gibsons failed to follow through with the details of the agreement, prompting Snap–On to pursue the repossession. Hulett has admitted he failed to protect the interests of his clients through his procrastination during the last two years.

## CONCLUSION

¶ 27 We find that Hulett's actions of seeking help through counseling and closing his

law office will serve to protect the public from further harm. He has expressed a desire to retain his license to practice law to address possible legal issues which may arise in the future in confirmed bankruptcy cases and in connection with his new business ventures. However, he does not wish to maintain a private law office. He also expressed his pride in being a member of the Bar and his wish to regain his integrity in all areas of his life. He has seen improvement as a result of his ongoing counseling.

¶ 28 This Court agrees with the Trial Panel's findings of fact and conclusions of law, as well as the stipulations of the parties, that Hulett violated Rules 1.1, 1.3, and 1.4, ORPC, and Rule 5.2, RGDP. Although we find Hulett's misconduct requires the imposition of discipline, we do not accept the recommendation of the Trial Panel that the appropriate discipline is two years and one day. Instead, we find the appropriate discipline to be a suspension of three months. See *State ex rel. Oklahoma Bar Association v. Giessmann*, 1997 OK 146, 948 P.2d 1227; *State ex rel. Oklahoma Bar Association v. Bolton*, 1994 OK 53, 880 P.2d 339; and *State ex rel. Oklahoma Bar Association v. Thompson*, 1993 OK 144, 864 P.2d 339. We acknowledge that each case is different and that even in the cases cited, some instances of misconduct are more serious than others.[17] However, we find a three month suspension is appropriate for Hulett's misconduct when compared to our prior cases of client neglect and failure to respond to the Bar.

¶ 29 Respondent Hulett is suspended from the practice of law for a period of three months beginning on the date this opinion is filed. Additionally, the Bar's application for the costs it incurred in this case is granted. Pursuant to Rule 6.16, RGDP,[18] Hulett is

---

**17.** In *Giessmann*, supra, the lawyer had been twice previously reprimanded, once privately and once publicly, for the neglect of his clients. In *Bolton*, supra, the lawyer had been twice previously reprimanded. In *Thompson*, only one grievance was ever filed against the Respondent. In addition to the allegations of client neglect, however, we also found evidence of the lawyer's misrepresentations to the General Counsel's Office. We imposed a suspension of ninety days, deferred for one year's probation. During that time he was required to attend Alcoholics Anony-

mous meetings and to contract with Lawyers Helping Lawyers, as his alcoholism was found to contribute to the mishandling of his client's case and his misrepresentations to the general counsel.

**18.** Rule 6.16, RGDP, 5 O.S.2001 Ch. 1, App. 1–A, provides:

The cost of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Profes-

ordered to pay the costs of this proceeding in the amount of $903.64 within ninety (90) days from the date of this opinion.

### RESPONDENT SUSPENDED FOR THREE MONTHS AND ORDERED TO PAY COSTS.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, KAUGER, WATT, COLBERT, REIF, JJ., concur.

TAYLOR, J., dissenting:

"I agree with the Professional Responsibility Tribunal, the Bar, **and the Respondent** that he should be suspended for two years and a day."

OPALA, J., absent.

sional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good case shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.