2001 OK 69

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Joseph Oliver MINTER, V, Respondent.**

**No. SCBD 4358.**

Supreme Court of Oklahoma.

Sept. 11, 2001.

Rehearing Denied Oct. 22, 2001.

Allen Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complainant.

Joseph Oliver Minter, V, Minter & Minter, Madill, OK, pro se.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the complaint and of its disposition?[1] and (2) Is a suspension from the practice of law for two years and one day an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

I

## INTRODUCTION TO THE RECORD

¶ 2 The Oklahoma Bar Association (the Bar or complainant) charged Joseph Oliver Minter, V (Minter or respondent), a licensed lawyer, with nine counts of professional misconduct set forth in an original and two amended complaints. The parties submitted stipulations as to the facts only. A hearing was held before a trial panel (the trial panel) of the Professional Responsibility Tribunal (PRT) on 2 November 1999, after which the latter issued a report containing its findings of fact and conclusions of law together with a recommendation for discipline. The trial panel found respondent guilty of all nine counts of professional misconduct. It recommended that he be suspended for two years and directed to pay the costs of this proceeding.

II

## BAR DISCIPLINARY PROCEEDINGS ARE NOT SUBJECT TO THE OKLAHOMA OPEN MEETING ACT[2]

■ ¶ 3 Respondent has moved for the dismissal of all charges against him or for the remand of this proceeding to the PRT for additional hearings on the ground that the court lacks subject matter jurisdiction. This is so, he argues, because the Bar and the Professional Responsibility Commission are subject to the provisions of the Oklahoma Open Meeting Act and have failed to abide by its terms. We disagree.

¶ 4 The Oklahoma Open Meeting Act (the Act) provides that all meetings of *public bodies* shall be held at a specified time and place convenient to the public and shall be open to the public.[3] The Act specifically sets out the entities that fall within the meaning of the term "public body."[4] *The state judiciary is expressly excluded.*[5]

1. The record consists of the parties' stipulations of fact, a transcript of the hearing held before the trial panel of the Professional Responsibility Tribunal, exhibits offered by complainant, which were admitted into evidence at that hearing, the trial panel's report, respondent's objection to the trial panel report, his motion to dismiss, and the Bar's responses.

2. The Oklahoma Open Meeting Act is codified at 25 O.S.1991 and Supp. 2000 §§ 301–314.

3. This requirement is set forth in the terms of 25 O.S.1991 § 303, which provide in pertinent part:

 "All meetings of public bodies, as defined hereinafter, shall be held at specified times and places which are convenient to the public and shall be open to the public, except as hereinaf-ter specifically provided. All meeting of such public bodies, ... shall be preceded by advance public notice specifying the time and place of each such meeting to be convened as well as the subject matter or matters to be considered at such meeting, as hereinafter provided."

4. The relevant terms of 25 O.S. Supp.2000 § 304 provide:

 " 'Public body' means the governing bodies of all municipalities located within this state, boards of county commissioners of the counties in this state, boards of public and higher education in this state and all boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts or any entity created by a public trust, task forces or study groups in this state supported in whole

¶ 5 The responsibility for legislation, prosecution, and adjudication on the subject of professional discipline of legal practitioners is constitutionally reposed in the judicial department.[6] The judiciary's authority over professional discipline is also conferred by statute.[7] The court performs the legislative and adjudicative functions directly, but in order to meet the requirements of due process has delegated the prosecutorial or enforcement function to the organs of the state bar.[8] In performing this role, the Bar acts as an official arm of this court.[9] The Professional Responsibility Commission, which is a subordinate entity of the Bar, is linked to this court in a like manner.[10]

¶ 6 Just as a grand jury is an accusatory appendage of the courts in the context of criminal prosecutions, so, too, are the Bar and the Professional Responsibility Commission the enforcement mechanism for and on behalf of this court in the context of professional discipline. The prosecutorial machinery for the enforcement of bar discipline is an essential component of the state judiciary and as such is exempt from the provisions of the Oklahoma Open Meeting Act.[11]

## III

## THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶ 7 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance.[12] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, including the licensure, ethics, and discipline of this state's legal practitioners.[13] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, *de novo* examination of all relevant facts,[14] in which the con-

---

or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary...."

5. *Id.*

6. *Tweedy v. Okl. Bar Ass'n*, 1981 OK 12, ¶ 10, 624 P.2d 1049, 1054; *In re Integration of the State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113.

7. *See* the terms of 5 O.S.1991 § 13, which provide:
 "The Supreme Court of the State of Oklahoma shall have the exclusive power and authority to discipline attorneys and counselors at law or revoke the permit to practice law granted to attorneys and counselors at law and the rules of conduct of attorneys and counselors at law in this state shall be such as are now or may hereafter be prescribed by the statutes of Oklahoma and the rules of the Supreme Court."

8. *Tweedy, supra,* note 6.

9. The relationship between the state bar and this court is set forth in the provisions of 5 O.S.1991 Ch.1 App. 1, Art. 1, § 1, which state:
 "The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions."

10. *Tweedy, supra,* note 6 at ¶ 1, at 1051.

11. Respondent also argues that his disciplinary history cannot be used to enhance discipline in this proceeding because the earlier proceedings were conducted in violation of the Oklahoma Open Meeting Act. This argument, too, fails for the reasons just explained.

12. *State ex rel. Okl. Bar Ass'n v. Leigh*, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; *State ex rel. Okl. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 8, 914 P.2d 644, 647; *State ex rel. Okl. Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *State ex rel. Okl. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543, 545; *State ex rel. Okl. Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113, 115.

13. *Eakin, supra,* note 12 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Downing*, 1990 OK 102, ¶ 12, 804 P.2d 1120, 1122–1123; *Raskin, supra,* note 12 at ¶ 11, at 265–266.

14. *Leigh, supra,* note 12; *Eakin, supra,* note 12 at ¶ 8, at 647–648; *State ex rel. Okl. Bar Ass'n v. Lloyd*, 1990 OK 14, ¶ 8, 787 P.2d 855, 858; *State ex rel.Okl. Bar Ass'n v. Stubblefield*, 1988 OK 141, ¶ 7, 766 P.2d 979, 982; *State ex rel. Okl. Bar Ass'n v. Cantrell*, 1987 OK 17, ¶ 1, 734 P.2d 1292, 1293; *State ex rel. Okl. Bar Ass'n v. Brandon*, 1969 OK 28, ¶ 5, 450 P.2d 824, 827. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution,

clusions and recommendations of the trial panel are neither binding nor persuasive.[15] In this undertaking we are not restricted by the scope-of-review rules applicable in the context of corrective relief on appeal or certiorari. In the latter context we may have to leave undisturbed another tribunal's findings of fact.[16]

■ ¶ 8 The court's duty can be discharged only if the trial panel submits to us a complete record of the proceedings.[17] Our initial task is to ascertain whether the tendered record is sufficient to permit (a) an independent determination of the facts and (b) the crafting of an appropriate discipline. The latter is that which (1) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (2) avoids the vice of visiting disparate treatment on the charged lawyer.[18]

¶ 9 Respondent contends that the record in this case is not sufficient for this court's *de novo* review.[19] One of his arguments—that the trial panel's report improperly omits a discussion of his motion to dismiss the charges for failure of the Bar and the Professional Responsibility Commission to comply with the Oklahoma Open Meeting Act—has been rendered moot by our holding that the Act does not apply to bar disciplinary proceedings. Respondent's remaining objections rest on several alleged instances of noncompliance by the trial panel with the rules governing the contents of its report. Respondent requests that we remand the case to the trial panel "for appropriate amendment of the Report."

¶ 10 Respondent objects to the trial panel report for its failure (1) to recite anywhere within its text the standard of proof—clear and convincing evidence—necessary to establish a violation,[20] (2) to provide a record specific enough to enable the court to identify which findings of fact establish a particular violation,[21] and (3) to inform the court that the Bar moved at the hearing before the trial panel to dismiss one of the charges.

■ ¶ 11 Respondent's quest for relief based upon errors in the trial panel's report

---

every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration. The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination *of another tribunal's record.*

15. *Eakin, supra,* note 12 at ¶ 8, at 648; *Raskin, supra,* note 12 at ¶ 11, at 265. The court's range of options in a disciplinary proceeding is set forth in Rule 6.15(a) of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991, Ch.1, App. 1 A:
 "The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

16. *Bolton, supra,* note 12 at ¶ 15, at 344; *Eakin, supra,* note 12 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar,* 436 So.2d 781, 782 (Miss.1983).

17. The terms of RGDP Rule 6.13, 5 O.S.1991 Ch. 1, App.1 A, state in pertinent part:
 "Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's find-

ings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. . . ."

18. *Eakin, supra,* note 12 at ¶ 9, at 648; *Bolton, supra,* note 12 at ¶ 16, at 345; *State ex rel. Okl. Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

19. Respondent presented this contention in the form of a pleading addressed to both the court and the PRT. The PRT's authority over bar disciplinary cases ends when the trial panel files its report. Post-report filings should be directed to this court alone.

20. The terms of RGDP Rule 6.12(c), 5 O.S.1991 Ch.1, App.1–A, provide:
 "To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."

21. *See supra* note 17 for the provisions of RGDP Rule 6.13, 5 O.S.1991 Ch.1, App.1–A.

reveals a fundamental misunderstanding of the respective roles played by the Bar, the Professional Responsibility Tribunal, and this court in the disposition of a disciplinary matter. The organs of the state bar are charged with conducting a preliminary investigation of the facts for the sole purpose of determining whether charges should be brought against a lawyer.[22] This prefatory assessment of the proof is then conveyed to the court in the trial panel's report. The findings of fact, conclusions of law, and recommendation of discipline proposed by the trial panel are advisory only.[23] They do not constitute another tribunal's decision and are neither binding nor persuasive.[24] *The duty to determine from the evidence whether the allegations of misconduct are established by clear and convincing evidence resides in this court alone.*[25]

 ¶ 12 The Bar and the PRT need only provide *a sufficient record* to serve as a basis for the court's exercise of its duty as the sole and final arbiter of a legal licensee's standing.[26] Sufficiency in this regard does not require perfect compliance with every rule applicable to the contents of the trial panel's report. Fidelity to strict rules of procedure should not interfere with our duty in a disciplinary proceeding to determine by legal and ethical standards an attorney's fitness to continue the practice of the profession.[27] "[T]he public interest in the ethical practice of law outweighs any blind devotion to procedure."[28] As long as the respondent

receives a fair hearing and the record presents clear and convincing evidence of the facts upon which the allegations rest, the trial panel's deviation from the rules governing the transmission of its conclusions— whether of fact or law—is harmless.

¶ 13 Having carefully scrutinized the record submitted to us in this proceeding, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct.

## IV

### THE CHARGES AGAINST RESPONDENT

#### A. VIOLATIONS BASED ON DEALINGS WITH CLIENTS

##### *1. Counts One and Two: The Cothran Grievance.*

¶ 14 On 20 December 1994 the District Court, Pontotoc County, appointed respondent to serve as co-conservator of Mary L. Cothran (Ms. Cothran), an elderly woman confined to a nursing home. In July of 1993, Ms. Cothran's nephew, Tom Cothran (Mr. Cothran), had discovered that the person then serving as his aunt's conservator had been embezzling money and/or property from her estate. In appointing respondent as Ms. Cothran's new conservator, the court directed him to seek restitution of the assets embezzled by the former conservator as well

**22.** *Tweedy, supra,* note 6 at ¶ 10, at 1054.

**23.** *State ex rel. Okl. Bar Ass'n v. Bolusky,* 2001 OK 26, ¶ 7, 23 P.3d 268, 272; *State ex rel. Okl. Bar Ass'n v. Doris,* 1999 OK 94, ¶ 2, 991 P.2d 1015, 1017.

**24.** *State ex rel. Okl. Bar Ass'n v. Arthur,* 1999 OK 97, ¶ 4, 991 P.2d 1026, 1029; *State ex rel. Okl. Bar Ass'n v. Livshee,* 1994 OK 12, ¶ 5, 870 P.2d 770, 773 ("... [S]ince the findings of fact made by the PRT are neither binding nor persuasive, and do not constitute another tribunal's decision, it is this court's duty to pass on the sufficiency and weight of the evidence as a tribunal of first instance with original and exclusive cognizance of the case.").

**25.** *Bolusky, supra,* note 23; *State ex rel. Okl. Bar Ass'n v. Thomas,* 1995 OK 145, ¶ 2, 911 P.2d 907, 909; *State ex rel. Okl. Bar Ass'n v. Busch,* 1996

OK 38, ¶ 14, 919 P.2d 1114, 1116; *State ex rel. Okl. Bar Ass'n v. Kessler,* 1991 OK 81, ¶ 12, 818 P.2d 463, 466 ("Before we may impose discipline upon an attorney, the allegations must be established by clear and convincing evidence. (citations omitted) In a bar disciplinary proceeding, this court as a licensing authority [exercises] ... exclusive original jurisdiction. Accordingly, while the trial panel's recommendations are afforded great weight, it is ultimately this Court's responsibility to make the final determination.").

**26.** *State ex rel. Okl. Bar Ass'n v. Caldwell,* 1994 OK 57, ¶ 16, 880 P.2d 349, 355.

**27.** *State ex rel. Okl. Bar Ass'n v. Brandon,* 1969 OK 28, ¶ 13, 450 P.2d 824, 828.

**28.** *State ex rel. Okl. Bar Ass'n v. Lowe,* 1982 OK 20, ¶ 7, 640 P.2d 1361, 1362.

as pursue legal action against anyone who might be liable for the loss.[29]

¶ 15 Prior to respondent's appointment, Mr. Cothran had engaged a Tulsa accounting firm to investigate and report on the amount embezzled. The report was not provided to respondent until April or early May 1995. Respondent, theorizing that the former conservator's law partners might be liable along with the former conservator, then met with lawyers for all three in an effort to negotiate a settlement. On 22 May 1995, while these negotiations were proceeding, Ms. Cothran died.

■ ¶ 16 When the negotiations failed to produce a settlement, respondent filed an action in June 1995 against the former conservator and his law partners to recover the embezzled funds. Having as yet not filed a probate proceeding nor sought the appointment of a special administrator,[30] respondent filed the action in his capacity as conservator.[31] The action was filed within the limitations period, which was set to expire in July. In November 1995, several months after the limitations period expired, the court dismissed the action without prejudice on the grounds that it had not been brought in the name of the real party in interest. Respondent made no request of the district court prior to the suit's dismissal for a reasonable time to effectuate a substitution of the proper party[32] nor did he attempt to re-file the action under the state's reviver statute within a year after the dismissal.[33] Neither did he appeal the decision. Respondent's inaction deprived the estate of the opportunity to recover approximately $375,000.[34]

¶ 17 Respondent did not file a probate proceeding for Ms. Cothran's estate until 20 February 1997, almost two years after she died. Respondent testified that Mr. Cothran began pressing him to file a probate proceeding in the fall of 1995. Respondent also stipulated that Mr. Cothran prepared a final accounting of the conservatorship, which he, respondent, never filed. Although he stipulated that he received the final accounting from Mr. Cothran in May 1995, he testified at the PRT hearing that the stipulation was in error and that he did not in fact obtain it until March 1997.[35] Respondent's explana-

29. The district court's order appointing respondent charged him with "... securing restitution for said ward of any sums of money or property which was improperly or illegally spent or taken by her previous conservator, Jerry Otis, as well as investigating and pursuing any and all legal causes of action which the ward may have as to any persons liable to said ward for said money or property."

30. A special administrator may be appointed if for any reason there is a delay in granting letters testamentary or of administration. *See* the provisions of 58 O.S. Supp.1992 § 211. A special administrator may commence and maintain or defend suits and other legal proceedings. *See* the provisions of 58 O.S.1991 § 215.

31. The authority of a conservator terminates upon the death of the ward. *Gordon v. Followell*, 1964 OK 74, ¶ 12, 391 P.2d 242, 245. An action accruing to the ward must thereafter be brought by the deceased's personal representative. *See* the provisions of 60 O.S.1991 § 313, which provide:

"A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, ..."

32. *See* the terms of 12 O.S.1991 § 2017, which provides:

"Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

33. *See* the terms of 12 O.S.1991 § 100, which provides:

"If any action is commenced within due time, and ... if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the ... failure although the time limit for commencing the action shall have expired before the new action is filed."

34. The former conservator paid $33,062.13 in restitution to the estate as a result of criminal charges filed against him.

35. In his testimony he explained that the "final accounting" he received in May 1995 was not the final accounting of the conservatorship, but the "accounting" of the embezzled funds done by the

tion for not filing it after that date—that he thought he was no longer the estate's attorney—is not supported by the record, which contains a letter dated mid-July 1997 indicating that Minter would be meeting that day with Mr. Cothran and his sister to discuss issues remaining in the case. It was not until 26 September 1997 that Mr. Cothran sent respondent a letter asking him to withdraw from the probate and informing him that new counsel had been retained. Respondent never filed a motion to withdraw.

¶ 18 Respondent stipulated that "Mr. Cothran felt that Respondent failed to properly communicate with him about the status of the conservatorship and probate." Despite this acknowledgment of Mr. Cothran's *feelings* about the level of communication between them, respondent testified that he believed he properly communicated with Mr. Cothran. Mr. Cothran did not testify.[36]

¶ 19 The trial panel concluded that respondent violated the following sections of the

Oklahoma Rules of Professional Conduct (ORPC): Rule 1.1(failing to provide competent representation),[37] Rule 1.3 (failing to act with reasonable diligence in representing a client),[38] Rule 1.4 (failing to keep a client reasonably informed about the status of a matter),[39] Rule 1.16(d) (failing to take reasonable steps upon termination of representation to protect a client's interests),[40] Rule 3.2 (failing to make reasonable efforts to expedite litigation),[41] and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice).[42] The panel also concluded that respondent's misconduct violated the terms of Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP) (engaging in acts contrary to prescribed standards of conduct and bringing discredit upon the legal profession).[43]

 ¶ 20 We agree that the record provides clear and convincing evidence respondent failed to provide competent and diligent

Tulsa accounting firm. Statements by Mr. Cothran in his grievance letter suggesting that the conservatorship's final accounting was available to respondent earlier than March 1997 are not admissible evidence.

36. Mr. Cothran's statement in his grievance letter that he constantly called respondent and that his calls were never returned is not admissible evidence.

37. The provisions of ORPC Rule 1.1, 5 O.S.1991 Ch.1, App. 3–A, state:
"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

38. The provisions of ORPC Rule 1.3, 5 O.S.1991 Ch.1, App. 3–A, state:
"A lawyer shall act with reasonable diligence and promptness in representing a client."

39. The provisions of ORPC Rule 1.4, 5 O.S.1991 Ch.1, App. 3–A, state:
"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

40. The provisions of ORPC Rule 1.16(d), 5 O.S. 1991 Ch.1, App. 3–A, state:

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

41. The provisions of ORPC Rule 3.2, 5 O.S.1991 Ch.1, App. 3–A, state:

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

42. The provisions of ORPC Rule 8.4(d), 5 O.S. 1991 Ch.1, App. 3–A, state:

"It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice; ..."

43. The provisions of RGDP Rule 1.3, 5 O.S.1991 Ch.1, App. 1–A, state:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

representation to the Cothran estate in violation of ORPC Rules 1.1 and 1.3, and that he failed to expedite litigation in violation of ORPC Rule 3.2.[44] We also agree with the trial panel's conclusion that respondent violated the provisions of RGDP Rule 1.4. Despite respondent's contention that he frequently communicated with Mr. Cothran, it is clear from the evidence that respondent did not inform Mr. Cothran that he was so disquieted by the prospect of handling a probate proceeding that he might not, or would not, be able to render that legal service. This was *critical information* regarding the status of the legal matters entrusted to respondent and Mr. Cothran was entitled to be informed of it. No matter how many conversations and meetings were held or what else respondent told Mr. Cothran, his failure to be honest with him about his competence to handle the probate establishes a violation of ORPC Rule 1.4.

¶ 21 We disagree with the trial panel's conclusion that respondent violated ORPC Rule 1.16(d). The complaint does not allege facts and the record fails to establish that respondent failed to take steps after discharge to protect his client's interests. Nevertheless, the complaint does allege and the evidence does establish a violation of ORPC Rule 1.16(a)(5), which requires a lawyer to withdraw upon being discharged.[45] The fact that the Bar did not specifically charge a violation of this rule is of no consequence.[46] The provisions of RGDP Rule 6.2, which govern the contents of disciplinary complaints, demand only that the complaint set forth the specific facts constituting the misconduct, and does not require the lawyer to be notified of the specific disciplinary rule that the misconduct violates.[47] The Bar discharged its duty to provide adequate notice by alleging that "Respondent failed to timely remove himself from representation in the Mary L. Cothran Estate as requested by the personal representative, Tom Cothran." Respondent stipulated that he did not withdraw from the Cothran representation as requested. The evidence establishes a violation of ORPC Rule 1.16(a)(5).

¶ 22 The Bar also charged respondent with violating ORPC Rule 8.4(d) by engaging in conduct "prejudicial to the administration of justice" and RGDP Rule 1.3 by engaging in behavior contrary to prescribed standards of conduct and bringing discredit upon the legal profession. In its brief the Bar indicates that it brought these charges based upon the totality of the circumstances constituting Counts One and Two of the complaint. Respondent asserts that nothing in the complaint, including the "bare citation" of the rules in its "boilerplate" paragraphs, informs him that the charges are based on the totality of the circumstances. This, he urges, constitutes a violation of his right to due process.

¶ 23 Due process must be afforded an accused attorney in a bar disciplinary proceeding.[48] Compliance with due process requires the Bar to allege *facts sufficient to put the accused lawyer on notice of the conduct upon which the charges of professional*

---

**44.** In explanation of his lengthy delay in filing the Cothran probate, respondent testified,

"It was a combination of I couldn't find anybody else to take it, because it was still a political hot potato, my own dislike of probates, my putting it off in the corner until I could figure out what to do with it, and getting lost in the rush of other things. It was my fault. But that's what happened."
He also testified,
"I stalled on Mr. Cothran because I didn't know for sure what I should do."

**45.** The provisions of ORPC Rule 1.16(a)(5), 5 O.S.1991 Ch.1, App. 3–A, state:

"... [A] lawyer ... shall withdraw from the representation of a client if:
..."

(5) the lawyer is discharged."

**46.** *State ex rel. Okl. Bar Ass'n v. Bedford*, 1997 OK 83, ¶ 15, 956 P.2d 148, 152.

**47.** *State ex rel. Okl. Bar Ass'n v. Moss*, 1990 OK 22, ¶ 20, 794 P.2d 403, 407. The provisions of RGDP Rule 6.2, 5 O.S.1991 Ch.1, App. 1–A, state:

"The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth."

**48.** *Eakin, supra*, note 12 at ¶ 15, at 649; *State ex rel. Okl. Bar Ass'n v. Minter*, 1998 OK 59, ¶ 19, 961 P.2d 208, 213.

*misconduct are based.*[49] It is the duty of this court, not that of the parties by stipulation or otherwise, to examine the facts *de novo* and determine which ethical rules are applicable.[50] As long as the respondent has notice of the *facts* underlying the misconduct charges, it is within the court's discretion whether to look at those facts as discrete instances of misconduct or consider them as part of a larger set of circumstances. The Bar's invitation to review respondent's conduct in the context of the totality of the circumstances is entirely appropriate and does not violate respondent's due process claim to notice and to an opportunity to be heard.

▌ ¶ 24 While we disagree with respondent that the application of Rule 8.4(d) to his misconduct would violate his right to due process, we do agree with respondent's contention that his conduct in the Cothran matter was not prejudicial to the administration of justice. In *State ex rel. Oklahoma Bar Association v. Bourne,*[51] the court reviewed Oklahoma case law applying ORPC Rule 8.4(d). In every case, the respondent's conduct included some element of deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct.[52] The Bar has cited no case where the court has held that lack of competence and diligence alone, the gravamen of respondent's misconduct in the Cothran matter, is a sufficient basis for a charge that the lawyer's conduct is prejudicial to the administration of justice. In *State ex rel. Oklahoma Bar Association v. Spadafora,*[53] we said,

> "Rule 8.4(d) may not be used to establish professional misconduct unless the complained acts were the sort that were 'previously disapproved by case law, statute, court rules or the "lore of the profession." ' "[54]

The Bar has not cited any case law, statute, or court rules, other than the substantive violations of the ORPC and RGDP, the breach of which would serve to establish that respondent engaged in conduct prejudicial to the administration of judicial process.[55] We

---

49. *State ex rel. Okl. Bar Ass'n v. Johnston,* 1993 OK 91, ¶ 19, 863 P.2d 1136, 1143 ("The Bar need only plead sufficient facts that will put the accused attorney on notice of the charges and give him an opportunity to respond to the facts alleged."); *State ex rel. Okl. Bar Ass'n v. Lobaugh,* 1988 OK 144, ¶ 15, 781 P.2d 806, 811 ("Due process in disciplinary proceedings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, *information concerning the claims of the opposing party,* reasonable opportunity to be heard, and the right to confront the unfavorable witnesses." [emphasis added] )

50. *Bolusky, supra,* note 23 at ¶ 8, at 272.

51. 1994 OK 78, 880 P.2d 360.

52. *Id.* at ¶ 9, n. 3, at 363, n. 3.

53. 1998 OK 28, 957 P.2d 114.

54. *Id.* at ¶ 38, at 120.

55. In *State ex rel. Okl. Bar Ass'n v. Bourne, supra* note 51, the court pointed out that Rule 8.4(d) has been criticized for uncertainty or vagueness, but noted that identical rules have been upheld as sufficiently definite for purposes of a disciplinary proceeding by the highest courts of Maryland and Oregon. *See, Attorney Grievance Comm'n of Maryland v. Alison,* 317 Md. 523, 565 A.2d 660 (1989) and *In re Rook,* 276 Or. 695, 556 P.2d 1351 (1976). A similar Texas rule has also been upheld as neither overbroad nor vague by the United States Court of Appeals for the Fifth Circuit. *See Howell v. State Bar of Texas,* 843 F.2d 205, *cert. denied,* 488 U.S. 982, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988). "Vague laws in any area suffer a constitutional infirmity." *Ashton v. Kentucky,* 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966). A fair warning—in common, understandable language—that intelligibly communicates the parameters of conduct to be proscribed is a *sine qua non* of due process incident to imposition of penalty, civil or criminal. *Ethics Comm'n v. Keating,* 1998 OK 36, ¶ 27, 958 P.2d 1250, 1275 (Opala, J., dissenting). The protection afforded by the Due Process Clause with respect to adequate notice applies to lawyers against whom disciplinary proceedings are brought. *State ex rel. Okl. Bar Ass'n v. Bolusky,* 2001 OK 26, ¶ 8, 23 P.3d 268, 272; *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968).

The United States Supreme Court has developed two doctrines under which imprecise laws may be facially attacked. First, laws that inhibit the exercise of First Amendment rights may be challenged under the overbreadth doctrine as facially invalid "if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.' " *Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67 (1999), quoting from

hence hold that the Bar has not met its burden with respect to a violation of ORPC Rule 8.4(d). Of that violation respondent stands exonerated.

¶ 25 As for RGDP Rule 1.3, we find that there is clear and convincing evidence that respondent's conduct violates that provision.

Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Enactments that do not fall within the overbreadth doctrine may nevertheless be challenged under the void for vagueness doctrine if the law "fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." Morales, supra; Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A successful facial challenge may be averted by a limiting judicial construction, which narrows a facially overbroad enactment's operation in a way that removes the seeming threat to constitutionally protected expression. Erznoznik v. Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); Boos v. Barry, 485 U.S. 312, 329, 108 S.Ct. 1157, 1168, 99 L.Ed.2d 333 (1988).

The rules governing the professional conduct of attorneys in large measure regulate communication and expression, and not just non-expressive conduct, thus implicating the First Amendment in their application. On its face, the phrase "conduct prejudicial to the administration of justice" used in Rule 8.4(d) is not sufficiently definite to provide fair warning of the parameters of the conduct the rule proscribes. The problem is in the use of the word "justice." In his treatise, General Theory of Law and State (Harvard University Press, 1945), the noted twentieth-century legal philosopher Hans Kelsen posits that justice—the ideal of a just social order—is a subjective, socially constructed judgment of value, which varies from place to place and time to time. It is not determined by means of rational cognition. "Since humanity is divided into many nations, classes, religions, professions and so on, often at variance with one another, there are a great many very different ideas of justice; too many for one to be able to speak simply of 'justice.'" Id. at 8. The doctrine of natural law claims to establish the content of justice on a rational basis, but Kelsen argues that its claim is illusory. "[N]one of the numerous natural law theories has so far succeeded in defining the content of this just order in a way even approaching the exactness and objectivity with which natural science can determine the content of the laws of nature, or legal science the content of a positive legal order." Id. at 9. See also Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 350–351, 89 S.Ct. 1820, 1827, 23 L.Ed.2d 349 (1969) (Black, J., dissenting); Calder v. Bull, 3 U.S. (3 Dall.) 386, 398–399, 1 L.Ed. 648 (1798) (Iradell, J., concurring).

## 2. Count Four: The Goff Grievance.

██ ¶ 26 On 27 March 1998, Ron Hanna filed a lawsuit against Larry Paul Goff (Goff) to recover money for medical services rendered. Goff retained respondent to represent him. Respondent failed to timely file an Entry of Appearance or an Answer, and a default judgment was entered against Goff on 11 May 1998. On 12 May 1998, respon-

Rather than seeking "justice," Kelsen maintains that the best a society can do is establish a positive legal order that minimizes the frictions among different interests and in doing so, establishes a framework for social peace.

We view the use of the bar disciplinary process to penalize conduct that prejudices justice in the sense that Kelsen develops it in his treatise—as being indeed unconstitutionally overbroad. Hence, in Bourne, we adopted a limiting or narrowing construction of Rule 8.4(d) in which the word justice is understood to mean the "just" application of the rules established by a positive legal order without regard to the "justness" of their content. In this sense, justice is synonymous with the course of adjudication, i.e. the judicial process. Interference with justice in this limited sense is susceptible of objective determination. In Bourne, we tied the application of Rule 8.4(d) to instances of severe interference with judicial proceedings and to conduct of such a serious nature that it harms our system of justice as a whole. Bourne, supra, at 362–363; State ex rel. Okl. Bar Ass'n v. Taylor, 1997 OK 48, ¶ 13, 937 P.2d 81, 84. We further noted in Bourne that lawyers should be able to deduce from the text of the rules governing professional conduct generally and those relating to Rule 8.4(d) specifically "that Rule 8.4(d) is intended to proscribe behavior already disapproved by case law, statute, or court rules" as well as the "lore of the profession." See generally J.H. BAKER, THE LAW'S TWO BODIES, pgs. 59 et seq. (Oxford Press 2001) (referring to "lore of the profession" as "common learning."). Additionally, Bourne sets out a comprehensive recitation of the cases in which a violation of Rule 8.4(d) has been found. Hence, through the process of judicial decision-making, the parameters of Rule 8.4(d) have been made concrete enough to apprize a lawyer of what conduct is proscribed by the rule. Ethics Comm'n v. Keating, supra, at ¶ 5, n. 9, at 1268, n. 9 (Opala, J., dissenting).

Clarity would be better served by the substitution in jurisprudence dealing with Rule 8.4(d) of the phrase "conduct prejudicial to the administration of judicial process " for the phrase "conduct prejudicial to the administration of justice." Bourne's narrowing construction of Rule 8.4(d) makes the two phrases synonymous, but replacing the phrase "conduct prejudicial to the administration of justice" with "conduct prejudicial to the administration of judicial process" better expresses the meaning of the rule.

dent filed an Answer and a First Set of Interrogatories. The plaintiff's attorney never received a copy of those pleadings through the mail, and first learned of them while reading *The Journal Record.* Plaintiff's attorney wrote a letter to respondent informing him that he had never received the pleadings. Respondent did not reply to that letter.

¶ 27 Upon obtaining the default judgment, the plaintiff's attorney, who was unaware that Goff had retained counsel, sent Goff a copy of the journal entry of default judgment. Goff's wife immediately called respondent and spoke to his secretary, who assured her that respondent would file a "Motion for Rehearing." Respondent did not then nor at any other time file a motion to vacate the default judgment. Goff and his wife repeatedly called respondent's office between the date they learned of the default judgment and the date they finally retained new counsel. Respondent did not return any of their telephone calls.

¶ 28 The trial panel found respondent guilty of violating ORPC Rules 1.1, 1.3, and 1.4.[56] It also found respondent guilty of violating RGDP Rule 5.2.[57] The record provides clear and convincing evidence that respondent is guilty of violating ORPC Rules 1.1, 1.3, and 1.4. The amended complaint contains no factual allegations in Count Four that would serve to establish a violation of RGDP Rule 5.2. Of that charge respondent stands exonerated.

---

**56.** *See* ORPC Rule 1.1, *supra* note 37, ORPC Rule 1.3, *supra* note 38, and ORPC Rule 1.4, *supra* note 39.

**57.** The provisions of RGDP Rule 5.2, 5 O.S.1991 Ch.1, App. 1–A, state in pertinent part that upon determining that the facts require a response from the lawyer, the General Counsel shall:

"... file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct.... The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline...."

### 3. *Count Six: The Sloan Grievance.*

 ¶ 29 In early 1994, Sharon Pittman, Tonya Pittman, and Cindy Pittman (the Pittmans) agreed to sell a parcel of land to Leon Sloan. The land had belonged to Charles Pittman, deceased. It had never been probated. Respondent testified that when the Pittmans retained him in March 1994 to represent them in connection with the sale of the land to Sloan, it was understood that he was to furnish Sloan with marketable title.

¶ 30 Respondent did nothing for almost two-and-one-half years. During that time, Sloan called respondent's office a couple of times, but respondent testified that he did not believe it was necessary to return his calls and never spoke to him. He did not recall ever speaking to the Pittmans during that period either. On 29 August 1996, respondent had each of the Pittmans execute a quit-claim deed to Sloan. Respondent testified in explanation of the delay that it was "one of those things that got stuck on the back burner." Tonya and Cindy were both married women, but neither husband signed the deed.[58] Respondent neither delivered the deeds to Sloan nor filed them for almost two years after their execution.[59] Almost four-and-one-half years had by this time elapsed since respondent was retained to implement the land sale.

¶ 31 The execution of the deeds by the Pittmans did nothing to clear the cloud on Sloan's title to the property. He appeared in

---

**58.** At the PRT hearing, the Bar questioned respondent's decision not to have the husbands of the married Pittman sisters sign the deeds. Because the land in question was not the homestead of either woman, respondent testified it was his understanding that the husband's signatures were unnecessary. *See* the terms of 16 O.S.1991 § 13.

**59.** Respondent did not file the deeds until on or about 12 June 1998. Respondent argues in his brief that once the deeds were executed in 1996, they became Sloan's property and that respondent, as the Pittman's attorney, had no "duty to, timely or otherwise, file the deeds." Even if we were to accept this argument, respondent would nevertheless have had a duty to the Pittmans (as well as to Sloan) to promptly deliver the deeds to Sloan. Instead, respondent kept the deeds in his office for almost two years.

respondent's office on several occasions demanding that respondent do something to clear his title, but never directly spoke with respondent. In November 1997, Sloan wrote a letter of complaint to the Bar. The Bar then wrote to respondent asking him to communicate with Sloan within two weeks. Four weeks later, Sloan again wrote the Bar to say that he had heard nothing from respondent. Sloan was in the process of selling the Pittman land along with other property he owned and the lack of marketable title to the Pittman parcel was interfering with the sale.

¶ 32 On 11 June 1998, the day before he filed the deeds, respondent filed a quiet-title action in the District Court, Marshall County, styled *Leon Sloan v. The Unknown Heirs of Charles Junior Pittman*, in which he represented that he was Sloan's attorney. Respondent did not confer with Sloan prior to taking this action on his behalf, did not inform Sloan after the fact that he had filed a petition in his name, nor did he otherwise communicate with Sloan during the pendency of the action. Respondent argues in his brief that a letter Sloan wrote to the Bar after the quiet title action had been filed shows that Sloan was aware of the action brought on his behalf. On 21 August 1998, the district court entered an order quieting title in Sloan.

¶ 33 The trial panel concluded that respondent had violated ORPC Rules 1.1, 1.2, 1.3, 1.4 and 3.2, as well as RGDP Rule 5.2.[60] Except as to RGDP Rule 5.2, the record provides clear and convincing evidence that respondent violated each of these provisions with respect to the Pittmans. Respondent objects that the Pittmans never filed a grievance against him. The absence of a grievance from a client does not prohibit the Bar from charging, and the court from finding, that ethical violations were committed.[61]

¶ 34 The complaint may also be understood to charge respondent with the same ethical violations toward Sloan. This presents a threshold question as to whether Sloan can be regarded as respondent's client for disciplinary purposes. Oklahoma recognizes that a duty may be created by a contract which is made expressly for the benefit of a third-party non-client beneficiary when harm to the beneficiary is foreseeable.[62] Sloan was a third-party non-client beneficiary of the contract between the Pittmans and respondent. Under the circumstances here, where the Pittmans no longer had an interest in the property and marketable title had to be pursued in Sloan's name, respondent's professional obligations became obligations owed to Sloan as well. Additionally, once respondent held himself out as Sloan's attorney by filing an action in that capacity, he became Sloan's attorney for disciplinary purposes. The record hence provides clear and convincing evidence that respondent violated the provisions of ORPC Rules 1.1, 1.2(a), 1.3, 1.4, and 3.2 with respect to Sloan.

¶ 35 The amended complaint contains no factual allegations in this count that would serve to establish a violation of RGDP Rule 5.2. Of that charge respondent stands exonerated.

## B. VIOLATIONS BASED ON MINTER'S RESPONSES TO THE BAR

### 1. Count Three: The Cothran Grievance.

¶ 36 Mr. Cothran sent a written grievance letter to the Bar dated 17 October 1997. On 24 October 1997, the Bar mailed a letter to respondent pursuant to RGDP Rule 5.2, requesting a written response to the

---

60. *See* ORPC Rule 1.1, *supra* note 37, ORPC Rule 1.3, *supra* note 38, ORPC Rule 1.4, *supra* note 39, ORPC Rule 3.2, *supra* note 41, and RGDP Rule 5.2, *supra* note 57. The provisions of ORPC Rule 1.2(a) state:
"A lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued...."

61. *Bolton, supra,* note 12 at ¶ 9, n. 11, at 344, n. 11; *Raskin, supra,* note 12 at ¶ 10, at 265.

62. *Bradford Securities Processing Services, Inc. v. Plaza Bank and Trust,* 1982 OK 96, ¶ 9, 653 P.2d 188, 190–91; *Keel v. Titan Const. Corp.,* 1981 OK 148, ¶ 11, 639 P.2d 1228, 1231; *Hesser v. Central Nat'l Bank & Trust Co.,* 1998 OK 15, ¶ 13, 956 P.2d 864, 867. *See also* the provisions of 15 O.S.1991, § 29, which state:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

letter within twenty (20) days. Respondent received but did not respond to this letter. On 14 November 1997, the Bar sent a letter to respondent by certified mail, requesting a response to the grievance within five (5) days. Respondent received this letter and, by letter dated 21 November 1997, requested an extension until 24 November 1997 to complete his answer. The Bar granted the extension, but respondent did not provide a written response until his deposition was taken on 20 February 1998. The trial panel found respondent guilty of violating RGDP Rule 5.2. We agree.

¶ 37 The Bar also charged respondent in Count Three with violating the provisions of ORPC Rule 8.1(b) (knowingly failing to respond to a lawful demand for information from a disciplinary authority) and 8.4(d) (conduct prejudicial to the administration of justice). The trial panel did not find that the Bar had met its burden of proof with respect to these two charges. We agree.

### 2. Count Five: The Goff Grievance.

¶ 38 On 26 August 1998, Goff filed a written grievance with the Bar, which was precipitated by Minter's failure to respond to a certified letter Goff had sent him two weeks earlier discharging him and requesting that he transfer Goff's file to the latter's new attorney, Stanley Anderson (Anderson). The Bar informed respondent of the grievance and received a reply from him dated 22 October 1998, in which respondent assured the Bar that he had turned over all documents to Anderson. In fact, respondent had not turned over any documents to Anderson as of that date. Anderson did not receive Goff's file until 10 November 1998.

¶ 39 The Bar charged respondent with violating ORPC Rule 8.1(a),[63] but moved at the hearing before the trial panel to dismiss the charge for lack of proof that respondent knew the statement was false at the time he

made it. The trial panel nevertheless concluded that respondent's conduct violated RGDP Rule 8.1(a). It also found a violation of RGDP Rule 5.2. We disagree and hold that the Bar did not present clear and convincing evidence that respondent knowingly made a false statement in connection with a disciplinary matter in violation of ORPC Rule 8.1(a) or that he violated RGDP Rule 5.2. Accordingly, respondent stands exonerated of these offences.

### 3. Count Seven: The Sloan Grievance.

¶ 40 Sloan sent a written grievance letter to the Bar on 10 November 1997.[64] The Bar asked respondent twice to respond to the grievance before initiating the formal complaint process against him. Respondent did not reply to either letter. The Bar then converted the matter into a formal complaint and on 13 May 1998, sent a letter to respondent pursuant to RGDP Rule 5.2, requesting a written response within twenty (20) days. Respondent received but did not respond to this letter. On 10 June 1998, the Bar sent a letter to respondent by certified mail requesting a response to Sloan's grievance within five (5) days. Respondent replied on 17 June 1998 that he had filed a quiet title action on Sloan's behalf. In September 1998, the Bar sent another letter to respondent seeking an update on the status of the quiet title action. Respondent did not reply. A second request was sent in October and a third request in November. Respondent did not reply to either of these letters. The Bar then issued a subpoena for respondent's deposition, which was taken in February 1999.

¶ 41 The trial panel concluded that respondent's conduct violated RGDP Rule 5.2. We agree.

### 4. Count Eight: The Sharon Sanders Grievance.

¶ 42 Sharon Sanders sent a grievance letter to the Bar in late August or early

---

**63.** The provisions of ORPC Rule 8.1(a), 5 O.S. 1991 Ch.1, App. 3–A, state:

"... [A] lawyer ... in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; ..."

**64.** The Pittmans did not file a grievance against respondent. Sloan paid the consideration for the property on or about the date the Pittmans first retained respondent and, having received the proceeds from the transaction up front, they either did not know or did not care that respondent had not fulfilled his contractual obligation to provide Sloan with marketable title.

September 1998. On 3 November 1998, the Bar mailed a letter to respondent pursuant to RGDP Rule 5.2, requesting a response to the grievance within twenty (20) days. Respondent received but did not respond to this letter. On 1 December 1998, the Bar sent respondent a letter by certified mail, requesting a response to Sanders' grievance within five (5) days. The post office made three unsuccessful attempts to deliver the letter to respondent, who did not go to the post office to claim it. A subpoena duces tecum was issued for respondent's deposition, which was taken on 23 February 1999. At that time Minter provided a written response to the grievance.

¶ 43 The trial panel concluded that respondent violated RGDP Rule 5.2. We agree.

### 5. Count Nine: The Kathy L. Reed Grievance.

 ¶ 44 On 17 March 1999, Kathy L. Reed filed a grievance with the Bar. On 8 April 1999, the Bar mailed a letter to respondent pursuant to RGDP Rule 5.2, requesting a response to the grievance within twenty (20) days. Respondent received but did not respond to this letter. On 3 May 1999, the Bar mailed a letter to respondent by certified mail, requesting a response to Reed's grievance within five (5) days. Respondent received but did not respond to this letter. A subpoena duces tecum was issued for respon-

dent's deposition, which was taken on 30 July 1999. During that deposition respondent promised while under oath to provide the Bar with certain requested material, including a written response to the grievance and correspondence with his client. The requested material was never provided.

¶ 45 The trial panel concluded that respondent violated RGDP Rule 5.2. We agree.

## V

## FACTORS CALLING FOR THE ENHANCEMENT OF DISCIPLINE

¶ 46 In addition to his repeated failures to respond to the Bar's inquiries, respondent also failed to timely respond to pleadings filed with this court and to orders of the presiding Master.[65] He ignored rules and orders of this court in the briefing process by filing a brief-in-chief which exceeds the permissible number of pages [66] and by filing an unauthorized reply brief.[67] We deem it reasonable to consider these derelictions in determining an appropriate discipline in this case.

¶ 47 Respondent stipulated that he has received two private reprimands from the Professional Responsibility Commission, the first for neglect and the second for neglect

**65.** Respondent's answer to the original complaint was filed approximately twelve days late. He was served with the amended complaint on 7 May 1999, but did not file an answer until 29 October. On or about 1 July 1999, the Bar filed a Motion to Deem Allegations Admitted with respect to the unanswered amended complaint. Minter did not respond to this motion. On 1 October 1999, the Bar filed a second amended complaint, which was sent to respondent by certified mail. Respondent testified that he was not claiming his certified mail at the time due to his father's death on 12 September 1999. Respondent was personally served on 21 October 1999 with a copy of the amended complaint, the Motion to Deem Allegations Admitted, the second amended complaint, and the trial panel's scheduling order. He answered the second amended complaint on 29 October along with his answer to the amended complaint.

**66.** Respondent's brief-in-chief is fifty-two pages in length with an additional forty-one pages of appendices. The Rules of the Supreme Court

provide that briefs "shall not exceed thirty (30) pages" and that "no brief which exceeds the page limitations of the Rule shall be accepted for filing by the clerk." *See* the provisions of Rule 1.11(b), Oklahoma Supreme Court Rules, 12 O.S. Supp.1997 Ch. 15, App.1. The brief was nevertheless accepted for filing. The Bar did not move to have the brief stricken. We will not strike it *sua sponte* because to do so would deprive respondent of an opportunity to be heard on the merits of this proceeding.

**67.** The Bar moved to strike this brief. We have carefully reviewed this brief to determine whether striking it would violate respondent's right to due process by taking from the court's purview an argument which might alter the outcome of this proceeding. We see nothing in the reply brief which would lead us to a different conclusion on any violation or on the disciplinary sanction to be imposed. We hence grant the Bar's motion to strike this brief as permitted by Rule 1.2, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997 Ch. 15, App.1.

and failure to respond to the Bar.[68] He also stipulated that he has previously been publicly censured by this court for neglect and failure to respond to the Bar.[69] Today's proceeding is respondent's fourth appearance before a disciplinary tribunal. He is charged in this case with same type of violations for which he has previously been disciplined.

## VI

## FACTORS RAISED BY RESPONDENT IN MITIGATION

¶ 48 Mitigating circumstances may be considered in assessing the quantum of discipline that is appropriate.[70] Respondent has raised several factors in mitigation. In the Cothran matter, respondent contends that he was pressured not to file a lawsuit against Ms. Cothran's former conservator and his law partners, whom he describes as persons with "a lot of influence in southeast Oklahoma." [71] Respondent never directly says that he failed to aggressively pursue the matter because of this pressure, but he implies in his testimony that the possibility of unspecified reprisals was on his mind. Yet when pressed to be specific, respondent backed off, saying that what he heard was no "more, or less, than what virtually every other lawyer has heard at some point down the road in dealing—that does litigation." He further testified that none of the attorneys involved "did anything that I would consider to be unethical." In further questioning, respondent explained his inaction as a consequence of the rapid expansion of his practice, stating, "I basically lost control over it." Respondent's testimony does not persuade us that the influential positions occupied by two of the defendants in the civil action, or any conduct on their part or on their behalf, played a significant role in respondent's mishandling of the Cothran matter.

¶ 49 Respondent further contends that if this court disciplines respondent for his conduct in the Cothran matter, it "will be viewed, rightly or wrongly, by many attorneys, particularly in Southeastern Oklahoma, as a warning or statement that the 'politically powerful' should not be challenged." We fail to see how the imposition of discipline on respondent *for not aggressively pursuing* a civil action against two "politically powerful" attorneys could possibly be construed by other attorneys as a warning *not* to pursue legitimate claims against those in positions of power or prestige. The message we intend is precisely the opposite—a lawyer's obligation to a client is the same regardless of whom an opposing party happens to be.

¶ 50 Respondent urges us to consider his father's illness and death in mitigation of his failure to respond to the Bar. Respondent's father fell ill in August of 1999 and died on 12 September 1999. During his deposition on 30 July 1999, respondent promised to furnish the Bar with certain documents relating to the Kathy Reed grievance. As of the date of the PRT hearing—2 November 1999—he still had not done so, but attributes this lapse to his preoccupation with his father's deteriorating condition and subsequent death. Respondent also attributes his failure to answer the second amended complaint to the fact that he did not go to the post office to collect his certified mail for an unspecified, but considerable, period of time following his father's death.

¶ 51 Were respondent's failures to respond to the Bar confined to this period of time, we would be inclined to place greater credence in his father's death as a cause of respondent's misconduct.[72] They are not. Respondent also failed to pick up certified mail from the Bar in the Sharon Sanders matter in 1998, a time well-removed from the period of respondent's father's illness and death. In fact, respondent's failures to respond to Bar

---

**68.** On 27 April 1990, respondent received a private reprimand from the PRC in case number OBAD 983; on 29 March 1996, respondent received a private reprimand from the PRC in case number OBAD 1246.

**69.** *Minter, supra,* note 48.

**70.** *State ex rel. Okl. Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 33, 4 P.3d 1242, 1255.

**71.** Both are past presidents of the Oklahoma Bar Association and one is a federal judge.

**72.** *Cf. State ex rel. Okl. Bar Ass'n v. Blackburn,* 1999 OK 17, ¶ 15, 976 P.2d 551, 554.

inquiries extend over many years. Even if respondent's father's illness and death contributed in the two cited instances to his failure to respond, they do not provide any excuse for the many other times he neglected his duty to answer the Bar.

¶ 52 It is this court's duty to protect the public. Regardless of his personal loss, respondent nevertheless had a duty to his clients and to the Bar to claim certified mail within a reasonable time after his father's death.[73] As it is, he indicates he did not retrieve that mail for more than three weeks—perhaps for more than a month—after his father's death. If respondent did not claim certified mail for such an extended period of time, he not only put off learning what the Bar had to say, but put his clients at risk that something of importance to them would not be timely addressed.

¶ 53 Respondent testified that he has agreed to work at his own expense with Jim Calloway, a risk assessment manager for the Bar's law office management program, and that he has instituted changes in his office procedures. We have previously considered these undertakings as mitigating factors in assessing discipline.[74] Respondent's efforts to correct deficiencies in the way his office is managed have been taken into account in mitigation of the disciplinary measure to be visited upon him today.

¶ 54 The remaining circumstances put forth by respondent as mitigating are summarily rejected. They provide neither justification nor excuse for respondent's misconduct and give the court no reason to lessen the severity of the disciplinary measure otherwise warranted by respondent's lapses of professional ethics.

## VII

## RESPONDENT'S MISCONDUCT WARRANTS A SUSPENSION OF HIS LICENSE TO PRACTICE LAW FOR TWO YEARS AND ONE DAY TOGETHER WITH PAYMENT OF THE COSTS OF THIS PROCEEDING

¶ 55 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. The disciplinary process, including the imposition of a disciplinary sanction, is designed not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[75] Disciplinary sanctions not only serve to deter the offending lawyer from committing similar acts in the future, but also operate to put others on notice that departures from ethical norms will not be tolerated.[76] The disciplinary measure imposed upon an offending lawyer should be consistent with the discipline imposed upon other lawyers for similar acts of professional misconduct.[77]

¶ 56 The trial panel recommended that respondent be suspended for a period of two years. We disagree. Respondent's misconduct—toward clients as well as toward the Bar and this court—demonstrates a degree of unfitness to practice law that calls for something more than a simple suspension. Respondent's mishandling of the Cothran, Goff, and Sloan matters displays a pattern of incompetence in the fundamentals of legal practice together with an unconscionable lack of diligence. A lawyer is licensed to assist litigants and the courts in administering judicial process. When an attorney accepts employment, he or she accepts the responsibility to competently and expeditiously process a client's case. "The wheels of justice should

---

73. *Cf. State ex rel. Okl. Bar Ass'n v. Fore,* 1977 OK 41, ¶ 9, 562 P.2d 511, 514 (not even personal illness excuses a lawyer's neglect of his professional responsibilities).

74. *State ex rel. Okl. Bar Ass'n v. Briggs,* 1999 OK 76, 990 P.2d 869.

75. *State ex rel. Okl. Bar Ass'n v. Smith,* 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018; *State ex rel. Okl. Bar Ass'n v. Lowe,* 1982 OK 20, ¶ 19, 640 P.2d 1361, 1362.

76. *State ex rel. Okl. Bar Ass'n v. Cummings,* 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; *State ex rel. Okl. Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

77. *Eakin, supra,* note 12 at ¶ 9, at 648; *Bolton, supra,* note 12 at ¶ 16, at 345; *Perceful, supra,* note 18 at ¶ 5, at 630.

start turning when an attorney accepts employment."[78] For the clients whose grievances are before us today, respondent's misconduct caused the wheels of justice to turn slowly or not at all.

¶ 57 Respondent's chronic disregard of his obligation to respond to inquiries from the Bar demonstrates an indifference bordering on hostility toward the Bar and the court. Respondent has stipulated to nearly a dozen instances where he received letters from the Bar and failed to respond. This is itself grounds for discipline.[79] In his testimony before the trial panel, respondent variously described his chronic oppositional stance toward the Bar as a sickness,[80] as an aversion to authority,[81] as a type of denial,[82] and as simple neglect.[83] None of these explanations either excuses or mitigates respondent's culpability for his disregard of his obligations under RGDP Rule 5.2.

■ ¶ 58 The public's interest in maintaining access to competent legal representation is best served by examination of a practitioner's performance over a span of time and an inquiry into the lawyer's professional history. If that history should reveal a pattern of misconduct, it will be a factor in tailoring the appropriate discipline.[84] In light of respondent's three prior encounters with the disciplinary system, in which he engaged in misconduct toward clients and toward the disciplinary system similar to that which brings him before us today, we are convinced that vindication of the legitimate interests served by Oklahoma's bar disciplinary regime calls in this case for the imposition of a suspension of two years and one day together with the payment of the costs of this proceeding. Anything less than that would permit respondent to gain his readmission without this court's order. Respondent's pattern of behavior is at odds with the standard of legal representation to which the public is entitled. He should now be required to meet the stricter standard that governs in this jurisdiction one's restoration of legal license that has stood suspended for at least two years and one day.[85]

## VIII

## SUMMARY

¶ 59 The record in this case provides clear and convincing evidence of respondent's lack of fitness to practice law. He has repeatedly failed competently and diligently to represent his clients, causing them financial harm and emotional distress. He has shown contempt for the Bar and the court by his refusal to respond to disciplinary inquiries. Respondent needs time to reassess his professional life. Our duty to safeguard the public, the judiciary, and the legal profession requires that, before respondent is again permitted to practice law in this jurisdiction, he convince the court he has overcome the tendencies that have brought him before us today.

¶ 60 **RESPONDENT'S LICENSE TO PRACTICE LAW IS ORDERED SUSPENDED FOR TWO YEARS AND ONE DAY AND HE IS DIRECTED TO PAY THE COSTS OF THIS PROCEEDING IN**

---

78. *State ex rel. Okl. Bar Ass'n v. Foster,* 1969 OK 23, ¶ 13, 454 P.2d 654, 657.

79. *Briggs, supra,* note 74 at ¶ 22, at 875.

80. In his testimony to the trial panel, respondent stated,

"... I do have trouble dealing with things from the General Counsel's Office. And that's pretty much a sickness on my part...."

81. In his testimony to the trial panel, respondent stated,

"... A good part of it is I don't like responding to the Bar. I tend to buck up when—with authority, have all my life...."

82. In his testimony to the trial panel, respondent stated,

"The best way to put it, Your Honor, is that I had my head stuck in the sand. I didn't want to deal with it. I knew I had messed up. It was a lot easier just not to think about it."

83. In his testimony to the trial panel, respondent stated,

"Part of it is—A lot if it has just been, I get the stuff in, I put it in a pile, put it—put it aside thinking, well, I'll deal with that tomorrow. Then I never got around to dealing with it."

84. *Bolton, supra,* note 12 at ¶ 18, at 345.

85. State *ex rel. Okl. Bar Ass'n v. Holden,* 1996 OK 88, ¶ 8, 925 P.2d 32, 37.

THE AMOUNT OF $1,979.36, WHICH SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.

¶ 61 ALL JUSTICES CONCUR.